**LUI CIRO, INC., a Hawaii corporation; Calvin W. Lui; and Theresa M. Lui, Plaintiffs,**

**v.**

**CIRO, INC., a Delaware corporation; Ciro of Bondstreet Inc., a Delaware corporation; Ciro Creations, Inc., a Maryland corporation; Ciro Hawaii, Inc., a Delaware corporation; Jack B. Levine; Abraham Gold; Howard Rubin; John Does 1–50; Jane Does 1–50; Doe Partnerships 1–50 Doe Corporations 1–50; Doe Entities 1–50; and Doe Governmental Units 1–50, Defendants.**

**CV. No. 94–00629–DAE.**

United States District Court, D. Hawai'i.

July 26, 1995.

Jeff N. Miyashiro, Watanabe Ing & Kawashima, Honolulu, HI, for plaintiffs.

Jack B. Levine, Key Biscayne, FL, pro se.

Philip R. Brown, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Honolulu, HI, Stephen P. Rinehart, Parker Chapin Flattau & Klimpl, New York City, for defendants.

## *ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT GOLD'S MOTION TO DISMISS AMENDED COMPLAINT*

DAVID ALAN EZRA, District Judge.

Defendant Abraham Gold's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) came before this court on July 17, 1995. At the hearing, William Gilardy, Jr., Esq.,

and Jeff Miyashiro, Esq., appeared for Plaintiffs Lui Ciro, Inc., Calvin W. Lui, and Theresa M. Lui (collectively, "the Luis"); Philip R. Brown, Esq. and Stephen G. Rinehart, Esq., appeared for Defendant Abraham Gold ("Gold"). The court having reviewed the motion and the supporting and opposing memoranda and having heard oral argument of counsel, GRANTS in part and DENIES in part Defendant's motion to dismiss the Amended Complaint.

### BACKGROUND

Plaintiffs Calvin and Theresa Lui are the sole shareholders and officers of Lui Ciro, Inc., a Hawaii corporation which entered into a series of agreements with Defendant Ciro, Inc. and/or its wholly owned subsidiaries ("Ciro") to jointly own and operate four Ciro franchise jewelry stores in Hawaii. Defendant Abraham Gold acquired an interest in Ciro by purchasing a controlling interest in Ciro's holding company in 1987. Gold served as Chairman of the Board of Ciro until April 1993. Co–Defendant Jack Levine ("Levine") was President and Chief Operating Officer of Ciro from 1990 until April 1993.

The Luis allege that Levine initially approached them in April 1991 about investing in Ciro franchises. That contact was followed up by Gold's meeting with the Luis during trips to Hawaii in May and November of 1991. The Luis also allege that Gold spoke to them on the telephone about the investment. The Luis claim that during these discussions, Gold and Levine made affirmative material misrepresentations regarding Ciro's management, financial condition, and the anticipated performance of the franchises. In addition to oral misrepresentations, Plaintiffs allege they were provided with printed information, such as a Franchise Offering Circular and Ciro's financial statements for 1988 to 1991, that contained materially false information. The Luis point to a number of specific documents that were sent by United States mail and also by facsimile transmission that they allege were fraudulent. *See* Amended Complaint at ¶ 30.

The Luis do not claim that the documents were prepared or sent by Gold in particular, arguing that the production and transmission of the documents were part of an ongoing effort on the part of all Defendants to induce the Luis to invest in the franchise. However, the Luis specifically allege that Gold represented that he would buy back the Luis' interest in the franchises at their cost if they became dissatisfied for any reason. With specific reference to Gold, the Luis also claim that he made certain other misrepresentations: (1) Gold had been president of Marks & Spencer, a large English company; (2) he possessed in excess of $25 million in liquid assets; (3) the stores would do a tremendous amount of business, estimated at $750,000 gross per year; and (4) sales activity would allow the Luis to recoup their investment in the first year. Amended Complaint at ¶ 73.

Beginning in December 1991, the Luis proceeded to enter into a number of franchise agreements with Ciro. *See* Amended Complaint at ¶ 35. Plaintiffs also claim they were induced to execute, as partners of a Ciro subsidiary, two promissory notes in the amount of $243,777.73, dated June 19, 1992, and $78,410.83, dated April 1, 1993, as part of the transaction establishing three of the Ciro shops. Amended Complaint at ¶ 35(d). In addition, the Luis claim they were fraudulently induced to sign as personal guarantors of a $725,000 loan from First Hawaiian Bank to provide working capital for the Hawaii stores, using their personal residence to secure the loan. Amended Complaint at ¶ 35(h). The Luis allege that the Defendants' fraudulent conduct continued during the entire course of their business relationship, with deception concerning Ciro's income, inventory, expenses, use of funds, and overall financial condition.

In July 1993, after conducting an internal investigation, Ciro filed an 8–K Report with the Securities and Exchange Commission which revealed that the 1990 and 1991 financial statements were misleading. The 8–K Report reduced the company's net income by more than $4 million for the years 1990 through 1992. Amended Complaint at ¶¶ 65–68, 89–93. The report also acknowledged misconduct on the part of Gold and Levine, *see* Amended Complaint, Exh. A at 6–7, resulting in the dismissal of Levine in April 1993 and the barring of Gold from acting on

behalf of the company as of the same date. In addition, the report indicated that Gold and others were the subject of an investigation by the United States Attorney for the Southern District of New York.

The Luis claim that Ciro did not inform them of these occurrences and that they only learned of the 8–K Report by chance in August 1993. The Plaintiffs allege that the fraudulent representations have injured them by inducing them to invest and to guarantee certain loans and that Defendants' failure to make lease payments on Ciro stores and to provide sufficient or appropriate inventory to the shops presently jeopardizes their investment. Consequently, the Luis filed a 21–count complaint in Hawaii state court on July 1, 1994 alleging claims of fraud, tortious interference with contractual relations, breach of fiduciary duty and of the covenant of good faith, negligent infliction of mental and emotional distress, and violations of Hawaii's Franchise Investment Law, Haw.Rev.Stat. ch. 482E, Hawaii's Unfair or Deceptive Acts or Practices and Unfair Methods of Competition statute, Haw.Rev.Stat. ch. 480, as well as a cause of action under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO").

On August 12, 1994, Defendant Gold removed the action to this court based on federal subject matter jurisdiction over RICO. In addition, on or about July 19, 1994, Defendants Ciro, Inc., Ciro of Bondstreet, Inc., and Ciro Creations, Inc. filed petitions for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.[1] Pursuant to 11 U.S.C. § 362(a)(1), this filing activated the automatic stay of the continuation of the litigation with respect to these Defendants.

On September 9, 1994, Gold filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). In response, the Luis filed an amended complaint on or about December 14, 1994. Gold then filed the instant motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) on January 20, 1995.

Gold brings his motion to dismiss on several grounds. First, he argues that the Amended Complaint fails to state claims for fraud with sufficient particularity under Rule 9(b). Next, he contends that the Amended Complaint fails to state a cause of action under RICO because it lacks allegations of: (1) a threat of continuing activity or closed ended continuity; (2) predicate acts; (3) injury resulting from the alleged racketeering activity; (4) a conspiracy involving Gold; and (5) an enterprise distinct from defendants. Gold also argues that Plaintiffs' lack of standing to bring a cause of action under RICO and failure to file a RICO case statement justify dismissal. Finally, Gold contends that the state claims suffer from various infirmities and should be dismissed.

## STANDARD OF REVIEW

### I. Dismissal under 12(b)(6)

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chandler v. McMinnville School Dist.*, 978 F.2d 524, 527 (9th Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The court must accept as true all allegations of material fact in the complaint and must construe these facts in the light most favorable to the plaintiff. *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1306 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).

### II. Dismissal under 9(b)

 Rule 9(b) requires that in any averment of fraud, the "circumstances constituting fraud … shall be stated with particularity." Fed.R.Civ.P. 9(b). Although the pleading of detailed evidentiary matter is not necessary, *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir.1973); *Nakamoto v. Hartley,* 758 F.Supp. 1357, 1366 (D.Haw.1991), "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." *In re GlenFed, Inc. Securities Litigation*, 42

---

**1.** *In re Ciro Inc.,* et al., Case No. 94–B–43389 (JHG).

F.3d 1541, 1547 (9th Cir.1994). This circuit has found that the plaintiff must include statements concerning the time, place, and nature of the alleged fraudulent activities and that "mere conclusory allegations of fraud are insufficient." *Id.* at 1548 (quoting *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989)). As the Ninth Circuit wrote in *GlenFed:*

> To allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.

42 F.3d at 1548. Absent such particularity, the Complaint will be dismissed.

## DISCUSSION

### I. Rule 9(b)

The particularity requirements of Rule 9(b) apply to RICO claims. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir.1989) (citing *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392–93 (9th Cir.1988)) (further citation omitted). "Allegations of fraud under section 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Id.* (citations omitted).

### A. *Lack of Differentiation Between Defendants*

■ Regarding the exact role of Gold within each scheme, the requirements of Rule 9(b) relax "as to matters peculiarly within the opposing party's knowledge." *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987) (citing 5 Wright & Miller, § 1298, at 416 & n. 95 (1969)). Where misleading information is conveyed through "group-published information" such as prospectuses, registration statements, annual reports or press releases, "it is reasonable to presume that these are the collective actions of the officers." *Wool v. Tandem Computers, Inc.,* 818 F.2d at 1440 (citations omitted). In such circumstances, the pleading of the misrepresentations themselves

with particularity and the defendants' roles where possible will satisfy Rule 9(b). *Id.* (citations omitted).

■ In order to benefit from the presumption of collective action created in *Wool v. Tandem,* however, a plaintiff must allege "some detail demonstrating collective responsibility." *In re MDC Holdings Securities Litigation,* 754 F.Supp. 785, 795 (S.D.Cal. 1990) (Complaint dismissed where it did not identify the roles of individual officers in preparing false reports); *see also Wanetick v. Mel's of Modesto, Inc.,* 811 F.Supp. 1402, 1405 (N.D.Cal.1992). The complaint in *Wool v. Tandem* alleged acts of a "narrowly defined group of officers who had direct involvement not only in the day-to-day affairs ... but also in ... financial statements in particular." *Id.* Later, in *Moore v. Kayport,* the Ninth Circuit upheld the dismissal of a complaint under Rule 9(b) where:

> [T]he prospectuses are not specifically identified as to content, date or author. The complaint does not specify which plaintiff received which prospectus.... The investors' allegations do not adequately state the facts on which their belief is founded.

885 F.2d at 540. Therefore, the court must assess whether the Amended Complaint here states sufficient details to give rise to the *Wool v. Tandem* presumption.

■ The Amended Complaint states that Gold was Chairman of the Board of Ciro. Amended Complaint at ¶ 10. According to the Amended Complaint, Gold "was the person primarily in control of and the mastermind of the scheme to defraud and commit other wrongful acts...." Amended Complaint at ¶ 15. In support of this allegation, the Amended Complaint states that Gold represented to Lui that he personally controlled, directed and supervised the management of Ciro. *Id.* The Amended Complaint also alleges that Gold represented that he directed and supervised Levine (*Id.*), who prepared some of the documents at issue. *Id.* at ¶¶ 29–30, 69, 75, 82–84, 109–111. Finally, the Amended Complaint alleges that Gold continues to participate in control of

Ciro's affairs through his nominee on Ciro's board and others. *Id.* at 59.

Given these allegations, the court concludes that Gold is a part of "a narrowly defined group of officers or directors who are alleged to have had day-to-day control over the fraudulent entities or their finances." *Moore v. Kayport,* 885 F.2d at 540. While the Amended Complaint does not allege that Gold was directly involved in preparing the documents, the allegations do connect him directly and in a supervisory capacity to the conduct at issue. The allegations also state their basis in fact, namely Gold's own representations. On a motion to dismiss, such allegations must be taken as true. *Imagineering,* 976 F.2d at 1306. Thus, the Luis are entitled to the presumption created in *Wool v. Tandem* and survive Gold's argument regarding the lack of differentiation between Defendants. However, the Amended Complaint must still specify the time, place and specific content of each act of misrepresentation. *See Schreiber Distrib. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986).

### B. *Particularity*

#### 1. Gold's Representations

The misrepresentations ascribed directly to Gold by the Amended Complaint consist of: (1) Gold's confidence in Levine (Amended Complaint at ¶ 72); (2) Gold's previous experience as President of Marks & Spencer and liquid assets he possessed (¶ 73); (3) projections concerning the volume of sales at the stores; (4) his promise to buy the Luis out of their investment (¶ 73); (5) Gold's representations that Ciro's financial statements fairly and accurately reflected Ciro's financial condition, and that Ciro was a legitimate, publicly-held business on a firm financial footing (¶ 74).

As to the time of Gold's statements, the Amended Complaint fails to be sufficiently specific, stating generally that Gold made these representations in May and November of 1991 during meetings in Hawaii, as well as over the telephone during that general period. Amended Complaint at ¶ 22. Concerning the identity of the parties to the statements, the Amended Complaint states specif-

ically that Gold met with Plaintiff Lui on one occasion. *Id.* at 72. However, the Amended Complaint never states which representations were made when and where such that they can constitute predicate acts under RICO, as discussed below. The Amended Complaint must give more details about the specific occasions when Gold allegedly made the statements to comply with the strictures of Rule 9(b).

Finally, as to the manner of the statements, the Amended Complaint fails to explain why they were misleading. This failure is fatal to the Amended Complaint under Rule 9(b):

> The plaintiff must set forth what is false or misleading about a statement, and *why it is false.* In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. A plaintiff might do less and still identify the statement complained of; indeed the plaintiff might do less and still set forth some of the circumstances of the fraud. But a plaintiff cannot do anything less and still comply with Rule 9(b)'s mandate to set forth with particularity those circumstances which constitute the fraud.

*In re GlenFed, Inc. Securities Litigation,* 42 F.3d at 1548 *(emphasis added ).* In *Glen-Fed,* the Ninth Circuit fleshed out the requirement of an explanation of falsity, comparing an obviously false representation that a house built on a landfill was in perfect shape, with "fraud by hindsight," where a plaintiff argues that the difference between a company's earlier statements of good health and later statements of failing health "must be" attributable to fraud. *Id.* (citing *Denny v. Barber,* 576 F.2d 465, 469–70 (2d Cir.1978) (Friendly, J.)). In the case of the house, the statement was always false because the house was always defective. However, in the latter case, the problem with the representation could be ascribed to an error in judgment. "[P]laintiff must set forth facts explaining why the difference between the earlier and the later statements or conditions is not merely the difference between two permissible judgments, but rather the result of a falsehood." *Id.*

Some of Gold's alleged representations fall into the defective house category, while some fall within the area of permissible judgments. Finally, one representation, the most important of the group, is in the form of a promise.

■ In the defective house category lie Gold's prior experience at Marks & Spencer and the $25 million in liquid assets he claimed to possess. However, the Amended Complaint does not state that these "houses rest on landfills," as it never specifically alleges that either of these representations were false or that they were misleading to the Luis. Therefore, these statements do not meet the specificity requirements of Rule 9(b).

■ Also in this category lie Gold's representations about the financial condition of Ciro and the adequacy of the financial statements. Here, the Amended Complaint alleges that these statements were "each materially false" (¶ 74), and the facts regarding the relevant documents and special investigation into Gold's and Levine's conduct provide further detail on this matter. Therefore, these statements meet the specificity requirements of Rule 9(b). However, as discussed above, the Amended Complaint does not clarify where, when and to whom these specific statements were made, failing the particularity test of Rule 9(b) for those reasons.

■ Gold's confidence in Levine and alleged predictions of profit fall within the judgment category. Generally, a prediction or opinion is not actionable as fraud unless the person making the statement has specialized knowledge upon which another party is entitled to rely. *Bulgo v. Munoz*, 853 F.2d 710, 716 (9th Cir.1988); *Horn v. Ray E. Friedman & Co.*, 776 F.2d 777 (8th Cir.1985). Here, the Amended Complaint does not explain what was misleading about these statements, and therefore does not meet the specificity requirements of Rule 9(b).

■ Finally, Gold's promise to purchase the Luis' interest does not resemble the defective house in any way. Generally, unfulfilled promises cannot form the basis for fraud unless it can be proved that the promisor had no intention of fulfilling the promise, rendering it misleading when made. *Acme*

*Refrigeration of Baton Rouge, Inc. v. Whirlpool Corp.*, 785 F.2d 1240 (5th Cir.), *cert. denied*, 479 U.S. 848, 107 S.Ct. 171, 93 L.Ed.2d 108 (1986). Here, the Amended Complaint does allege generally that Gold intended to defraud the Luis, but never states that Gold had no intention of fulfilling the promise and provides no further explanation of why it was misleading. The court may infer from the body of the Amended Complaint that Gold did not fulfill his promise, but this does not indicate his intent when the promise was made. Therefore, the complete lack of explanation of why the promise was misleading precludes that promise from meeting the specificity requirement of Rule 9(b).

#### 2. Documents

■ The Amended Complaint not only states the relevant dates of preparation and receipt of the documents, as well as the parties receiving them, but also provides an explanation as to the statements contained in the documents that misled the Luis. For example, having specifically detailed the conveyance of the documents by Defendants earlier in the Amended Complaint (¶ 30), the Amended Complaint goes on to allege that Defendants:

> provided to plaintiffs ... false financials for Ciro for the year 1990 and the quarterly periods through the third quarter of 1991, which were materially false and intentionally misleading, in that they overstated the net income and loss figure; overstated figures as to Ciro's inventory; overstated figures of retail sales activities; misstated figures for expenses and credits; and concealed fraudulent and inappropriate agreements and loan transactions.

Amended Complaint at ¶ 75. Such an explanation of the misleading nature of the documents meets the requirements of Rule 9(b).

In sum, the Amended Complaint fails to allege with sufficient particularity Gold's alleged misrepresentations concerning the Luis' initial participation in the companies. However, because of the *Wool v. Tandem* presumption, Gold is implicated in the preparation of the statements themselves. All oth-

er misrepresentations, including Gold's promise to purchase the Luis' investment, as well as his representations regarding his liquid assets, prior business experience, and projections of performance, do not meet the strictures of Rule 9(b) and therefore cannot form the basis for a claim under the Amended Complaint.

### 3. Continuing Fraud

▮ Similarly, the Amended Complaint's allegations of continuing fraud lack specificity, and must be dismissed on this basis. These allegations do not directly implicate Gold, or Levine or Rubin for that matter, except to indicate that Gold continues to exercise control over Ciro through his nominee to the board of directors. The Luis contend that Gold is implicated by their allegations of conspiracy. However, even if these allegations implicated Gold, they fail to indicate the time, place or nature of the fraudulent acts, stating simply that:

> The new management has also continued fraudulent practices associated with the maintenance and operation of the Hawaii franchise stores. The new management continues to fail and or refuse to provide the three resort shop stores with inventory ... [and] has intentionally discriminated against the resort shop stores in the supply of inventory by diverting available inventory to stores owned by the Ciro Enterprise ... [and] has provided the three resort shop stores with merchandise of inferior quality....

Complaint at ¶¶ 101–03. Not only do these allegations fail to specify the time, place, party and manner of the misrepresentations, they also fail to state claims of mail or wire fraud. Accordingly, these claims are dismissed under Rule 9(b) for their lack of specificity.

## II. RICO Claim

RICO provides, in pertinent part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1988). Subsection (d) makes it unlawful to conspire to violate subsection (c).

Gold argues that the Amended Complaint fails to state a cause of action under RICO because the Luis have failed to: (1) file a RICO case statement; (2) allege any RICO injury; (3) allege proximate cause; (3) allege facts supporting their standing to sue under RICO; (4) allege a pattern of racketeering activity; (5) allege predicate acts; (6) allege that Gold conspired to violate RICO; and (7) allege the existence of an enterprise distinct from the Defendants. The court will address each of these contentions in turn.

### A. *RICO Case Statement*

By a standing order of this court dated May 30, 1991, plaintiffs filing a complaint stating a RICO cause of action are required to file a RICO case statement within 30 days of filing the complaint. The Luis failed to file their RICO case statement until March 27, 1995. Consequently, Gold requests that this court dismiss the RICO claim for failure to comply with this court's order pursuant to Fed.R.Civ.P. 41(b). Dismissal under Rule 41(b), however, is a harsh penalty and should be imposed only in extreme circumstances. *Malone v. United States Postal Serv.,* 833 F.2d 128, 130 (9th Cir.1987).

▮ To justify dismissal for failure to comply with a court order, the district court must weigh five factors including: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1260–61 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992), (quoting *Thompson v. Housing Auth.,* 782 F.2d 829, 831 (9th Cir.1986), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986)). The court finds none of those factors applicable here. Because the order was not included in the latest version of the Local Rules for the District of Hawaii, and Gold, in his motion to

dismiss, did not cite to the actual order, the court understands that notice to the Luis was a problem. Upon notification by this court that a case statement was required, the Luis did in fact file the statement on March 27, 1995. The court believes the initial failure to file the RICO case statement was not in willful disregard of the requirement. Therefore, the court will exercise its discretion to not dismiss the RICO claim pursuant to Rule 41(b).

### B. *RICO Injury*

■ Not all injuries are compensable under RICO. *Imagineering,* 976 F.2d at 1310 (citing *Oscar v. University Students Co-operative Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992)). Ninth Circuit caselaw limits RICO "injury" to concrete financial loss. *Id.* (citations omitted).

■ Here, the Luis' investment consists of personal guarantees on more than $1,000,-000 in promissory notes. Plaintiff Lui is the maker of the notes. Nowhere in the Amended Complaint do the Luis allege that the creditors have foreclosed on the notes or begun proceedings against the Luis as makers or guarantors. The Amended Complaint simply alleges that some of the notes "have been in default since June 1994," and that Ciro has informed the Luis that it "intend[s] to refuse to honor any obligations associated with the $725,000 FHB loan. . . ." Amended Complaint at ¶ 99. The Luis emphasize that they have encumbered their home as collateral for this loan. The Luis also allege that Ciro is currently failing to provide their shops with inventory of sufficient quality or quantity. *Id.* at ¶¶ 101–02.

These allegations do not demonstrate any present or concrete financial loss. That the Luis are currently at risk of some loss does not equate with the concrete showing of actual financial loss required under RICO. *See Imagineering,* 976 F.2d at 1310 (citing *Oscar,* 965 F.2d at 785); *Fleischhauer v. Feltner,* 879 F.2d 1290, 1300 (6th Cir.1989) (plaintiffs entitled to recover only for money they paid out), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); *Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir.

1990). In *Berg,* the Ninth Circuit held that directors of the Getty Oil Company could not maintain an action under RICO against the insurers who had canceled their liability policies because the directors had incurred no actual expenses as a result of the cancellation, even though the directors alleged that they had lost "both the protection . . . afforded against potential financial loss in the future and the present peace of mind that flows from such protection." 915 F.2d at 463–64. Even though the directors characterized their interests as "valuable intangible property," the court held that the evaporation of such interests did not constitute injury compensable under RICO.

Similarly, the risk of future financial loss as guarantors of loans does not fall within the "concrete financial loss" required by RICO, which requires more than "injury to a valuable intangible property interest." *Id.* at 464. Unless injuries become "concrete and actual," they do not state a claim under RICO. *Steele v. Hospital Corp. of America,* 36 F.3d 69, 71 (9th Cir.1994) (citations omitted). In *First Nationwide Bank v. Gelt Funding, Corp.,* 820 F.Supp. 89, 92 (S.D.N.Y. 1993), a district court reasoned that a mortgagee had not stated sufficient injury based on misrepresentations inducing the making of loans. With respect to the loans already in default, the court stated that the actual damages would depend on the outcome of foreclosure actions, and that therefore the damages were contingent and not concrete. *Id.* at 93. With respect to loans not yet in default, the court stated that any damages were too speculative. *Id.* at 94.

This court agrees with the reasoning of the district court in *First Nationwide Bank v. Gelt Funding.* Any losses to the Luis depend on successful bank foreclosure actions, and are not now concrete losses of the form required by RICO. Therefore, the court finds that the Amended Complaint fails to state a cause of action under RICO based upon injury to the Luis' alleged participation in certain loans.

■ Concerning the Amended Complaint's allegations of current failure by Ciro to supply the Luis with sufficient quantity and quality of merchandise, the Luis do not

allege a decrease in sales at their stores or any other injurious result. Nor, indeed, do Plaintiffs anywhere allege any specific loss resulting from Defendants' conduct. The court contrasts the findings of an Utah district judge in *Reeder v. Kermit Johnson, Alphagraphics, Inc.*, 723 F.Supp. 1428 (D.Utah 1989). In *Reeder*, plaintiff franchisees' allegations of injury against defendant franchisors survived defendants' motion to dismiss. Plaintiffs alleged that they had been forced to pay more money in franchise fees to defendants through defendants' fraud, and that defendants had required them to purchase certain defective equipment and then had pocketed the reimbursement from the company that produced the equipment. *Id.* at 1436. The court held that these allegations presented sufficient damages arising from the racketeering activity, namely economic extortion in violation of 18 U.S.C. § 1951 and 1341. *Id.*

Here, the Amended Complaint alleges diversion of inventory away from the Luis' stores and the sale of defective merchandise to the Luis. However, the Luis do not argue that the diversion of inventory is a predicate act, and they do not show that it has caused direct and concrete financial loss to their business. Moreover, as discussed above, these claims fail to include the requisite specificity under Rule 9(b), and therefore cannot form a basis for a RICO claim.

### C. *Proximate Cause*

■ Section 1964(c) allows "[a]ny person injured in his business or property by reason of a violation of" RICO to sue, and, if successful, recover treble damages and attorney's fees. However, to ensure that RICO does not expand to provide "a federal cause of action and treble damages to every tort plaintiff," the Ninth Circuit requires a showing of concrete financial loss proximately caused by a defendant's violation. *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783, 786 (9th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992); *see also Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).

In *Imagineering*, the Ninth Circuit found "but/for" causation a necessary but insufficient condition, without proximate cause, to meet the requirements of RICO. 976 F.2d at 1312. The court held that contracts lost by a subcontractor as the result of racketeering activity visited upon the prime contractors demonstrated "but/for" causation, but not proximate cause:

> It was the intervening inability of the prime contractors to secure the contracts that was the direct cause of plaintiffs' injuries. Under *Holmes [v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) ]*, the MWBE plaintiffs are missing the direct relationship needed to show Kiewit proximately caused their injuries.

*Id.* The court went on to explain that "the rule has more to do with problems of proof than with foreseeability," writing that "[b]ecause of the indirect nature of the injury it is difficult for the court to ascertain what amount of damage suffered by the plaintiffs is attributable to just Kiewit's conduct, apart from other factors." *Id.*

Here, the court has noted above the problems with the contingent nature of the injuries alleged by the Luis, and similar problems with intervening causes also exist. The main intervening causes come not in the form of other parties as in *Imagineering;* rather, they come in the form of other conduct necessary to set the losses in motion, namely the defaults on the loans which the Luis' have guaranteed. Even though they allege that they were misled into guaranteeing the loans, they would suffer no loss if the loans were honored. The failure of Ciro to honor its obligations under the loans is not itself a predicate act or unlawful activity. Therefore, the defaults are intervening causes, removing the fraud from the category of primary or proximate cause. Moreover, as in *Imagineering*, there are third-party actors, the banks, whose acts will also cause or relieve the Luis' losses, none of which have yet accrued. Therefore, the court finds that the allegations of fraud in inducing the Luis to enter into the partnership agreements and guarantee the loans have not proximately

caused injury to Lui Ciro under the definitions of causation and injury under RICO.

As to the ongoing acts alleged by the Luis, the court has already determined that these acts have not been pleaded with sufficient specificity. However, even if these acts were so pleaded, they would not demonstrate concrete injury proximately caused by the predicate acts. The Luis do not allege that the ongoing fraud involves mail or wire fraud, nor do they specify that it has caused a concrete injury. Therefore, the court finds the lack of proximate causation to be a separate ground for the dismissal of the Amended Complaint.

### D. *Standing*

It is axiomatic that a stockholder, director, officer or employee of a corporation has no individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation. *Sparling v. Hoffman Construction Co., Inc.*, 864 F.2d 635, 640 (9th Cir. 1988). It is also generally accepted that guarantors of a corporation's debt, even if those guarantors are also stockholders, do not have standing to bring an action if the only harm suffered is derivative of the harm the corporation suffered. *Sparling v. Hoffman*, 864 F.2d at 641; *see also Mid–State Fertilizer v. Exchange National Bank*, 877 F.2d 1333, 1335–37 (7th Cir.1989).

Whereas in *Sparling* the Ninth Circuit only touched upon the status of guarantors of corporate debt, determining that they lacked standing to sue for harm to the corporation under RICO, in *Mid–State Fertilizer*, Judge Easterbrook explained the reasoning for this position at length:

Investors gain or lose with the firm; stockholders receive what's left after the corporation pays its debts. Lenders (guarantees are a form of contingent loan) also gain or lose with the firm, although lenders have more protection than equity investors.... (citations omitted).

\* \* \* \* \* \*

When the injury is derivative, recovery by the indirectly-injured person is a form of double counting. "Corporation" is but a collective noun for real people—investors, employees, suppliers with contract rights, and others. A blow that costs "the firm" $100 injures one or more of those persons. If, however, we allow the corporation to litigate in its own name and collect the whole sum (as we do), we must exclude attempts by the participants in the venture to recover for their individual injuries.... Suits by shareholders, guarantors, and the like may well be efforts to divert the debtor's assets—to pay off one set of creditors (here, the [plaintiffs]) while keeping the proceeds out of the hands of the firm's other creditors.

\* \* \* \* \* \*

The participants most directly affected by injury inflicted on the firm are the stockholders—for their investment is first to be wiped out. Creditors come next. Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm. We know that creditors cannot recover directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover. *One could say that guarantors are different because they may deal directly with the wrongdoer. The [plaintiffs'] guarantees were contracts between them and Exchange. But direct dealing is not the same as direct injury. The [plaintiffs] do not contend that Exchange broke the contracts by which the [plaintiffs] guaranteed Mid–State's borrowings. They say, rather, that Exchange violated statutory and contractual duties owed to Mid–State, which caused them derivative injury as guarantors. Recovery by Mid–State would put the [plaintiffs] in the position they would have occupied had Exchange lived up to its promises. There is therefore no reason other than a semantic one to treat guarantors differently from debt investors in the firm, and semantics (even if glorified as semiotics or hermeneutics) is not good enough.*

877 F.2d at 1335–37 (emphasis added).

Here, the partnership and licensing agreements with Ciro were entered into by Lui–

Ciro, not by the Luis personally.[2] Amended Complaint at ¶ 35. Personally, the Luis have risked their wealth, including their house, through their guarantees of the corporate debt.[3] As noted above, this risk does not constitute a present, concrete injury. Moreover, this risk depends on the success of Lui–Ciro in its agreements with the Ciro Companies and these companies' ability to pay back the loans. This depends in turn upon the rise or fall of the companies, imposing no direct harm on the Luis, who are in the category of investors in Lui Ciro and guarantors of notes entered into by Lui Ciro and its partners. It is Lui Ciro, then, that bears any injury created by its entry into the partnership and loan agreements, leaving the individual Plaintiffs, Calvin and Theresa Lui, without standing to sue under RICO. While this may seem a harsh result, it is the risk undertaken by any investor in a corporation. It does not foreclose recovery to the Luis, but merely leaves the recovery initially to Lui Ciro, to be later distributed to the Luis.

Accordingly, the court finds that Plaintiffs Calvin and Theresa Lui lack individual standing to bring this action. However, this finding does not result in a dismissal of the Amended Complaint, as Lui Ciro retains standing to sue for any of the concrete injuries discussed above.

E. *Pattern of Racketeering Activity*

■ To properly state a section 1962(c) RICO claim, a plaintiff must plead that the defendants conducted an enterprise through a "pattern of racketeering activity." *Id.*; *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.1989). A pattern of racketeering activity requires predicate acts which "amount to, or ... otherwise consti-

tute a threat of continuing racketeering activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). The RICO claim must allege either (1) open-ended continuity involving a "specific threat of repetition extending indefinitely into the future," or (2) closed-ended continuity, with related predicate acts extending over a "substantial period of time." *Id.* at 242, 109 S.Ct. at 2902.

### 1. Continuing Threat

■ In order to meet the test of open-ended continuity, the complaint must allege that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." *Id.* In *Northwestern Bell*, the Court illustrated the concept of such an open-ended continuing threat with the example of a "hoodlum" selling "insurance" to storekeepers to cover them for breakage of their windows, with continued demands to collect "premiums" to avoid trouble. *Id.* Even if the demands were few and close together in time, the threat of future repetition would supply the requisite continuity under the RICO statute. *Id.* Open-ended continuity would also be satisfied "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 243, 109 S.Ct. at 2902; *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir.1992).

In the instant case, the open-ended threat of continuity is not relevant in establishing a pattern of racketeering activity. The Amended Complaint admits that Ciro's board banned Gold from further company activities as of April 1993, thus dispelling such a con-

**2.** The Amended Complaint alleges that Lui Ciro entered into: (1) a license and, later, franchise agreement with Ciro Creations, whereby Lui Ciro became a licensee of the trademark "Ciro" (¶ 35(a)); (2) a partnership agreement with Ciro Hawaii, a wholly-owned subsidiary of Ciro, forming Ciro Hawaii Partners, a Hawaii general partnership organized for the purpose of operating as assigned under the franchise agreement (¶ 35(b)); (3) through Ciro Hawaii Partners into a management agreement with Bondstreet, another Ciro subsidiary, for the purpose of engaging Bondstreet's services in the management of the retail stores operated in the State of Hawaii (¶ 35(c));

and (4) an agreement with Bondstreet to form Ciro/Ala Moana, Inc., for the purpose of operating a retail store at Ala Moana Shopping Center.

**3.** The Luis personally guaranteed (1) notes entered into by Ciro Hawaii Partners (Plaintiff Lui Ciro and Defendant Ciro Hawaii) in favor of third-party Kalama Beach Corporation; and (2) a loan entered into by Ciro Hawaii Partners and Ciro/Ala Moana (Plaintiff Lui Ciro and Defendant Bondstreet) with third-party First Hawaiian Bank.

tinued threat. Although the Luis allege that Gold, as a major shareholder, continues to exercise control through nominees and "others" in the new management, the amended complaint and the RICO case statement fail to be more specific in their claim regarding Gold's ongoing involvement. Moreover, as discussed above and below, the ongoing acts, which consist of alleged diversion of inventory and delivery of defective inventory, are not pleaded with particularity under Rule 9(b) and do not constitute predicate acts. Even if the acts had been pleaded with sufficient particularity, the Amended Complaint alleges no damages therefrom. Thus, for all these reasons, the court concludes that an allegation of a pattern of racketeering based on the threat of continuing activity is insufficiently pleaded.

### 2. Closed Ended Continuity

 "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Northwestern Bell*, 492 U.S. at 242, 109 S.Ct. at 2902. A pattern of racketeering activity requires at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). For example, in *Ikuno v. Yip*, 912 F.2d 306 (9th Cir.1990), the court held that a pattern of RICO activity could be shown by the filing of two allegedly false annual reports. Yet, "while two acts are necessary, they may not be sufficient." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 n. 14 (1985). In the Luis' case, Plaintiffs enumerate multiple acts of mail and wire fraud to meet the threshold requirement.

 There is also a temporal requirement. Predicate acts occurring over several weeks or months are not sufficient to meet the "substantial period" test. *Northwestern Bell*, 492 U.S. at 242, 109 S.Ct. at 2902; *see also River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1464–65 (9th Cir.1992) (finding alleged scheme to defraud purchasers of retail grocery stores which consisted of predicate acts spanning just one month was not sufficient to establish RICO claim). While there is no bright line defining a "substantial period" in terms of months or

years, the Ninth Circuit has found "no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year. A pattern of activity lasting only a few months does not reflect the 'long term criminal conduct' to which RICO was intended to apply." *Religious Technology Ctr. v. Wollersheim*, 971 F.2d 364, 366–67, n. 7 (9th Cir.1992). The Luis list specific instances of the dissemination of materially false financial information by mail and wire over a two-year period prior to Gold's cessation of activity with Ciro. The court finds that these allegations meet the temporal requirement.

 The Ninth Circuit has also adopted a test for pattern of racketeering activity which "inquires whether the predicate acts are sporadic or isolated. If they are isolated and sporadic, then they cannot form a 'pattern.'" *Durning v. Citibank, Int'l*, 990 F.2d 1133, 1138 (9th Cir.1993) (quoting *Ikuno*, 912 F.2d at 309). In *Durning*, the court found that while the defendants may have committed numerous related predicate acts in distributing a false disclosure statement, all of those acts arose from a single and isolated event, the dissemination of one misleading document in conjunction with a single bond issue. 990 F.2d at 1139. Here, in contrast, the Luis point to a number of different misleading documents and representations, as well as at least two loan agreements and several partnership agreements entered into as a result of the fraud.

 Gold contends that there is insufficient closed-ended continuity because the alleged wrongful conduct involved a single scheme, few victims and a limited goal. *See, e.g., Medallion Television Ent., Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir.1987), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989) (fraudulent inducement of joint venture agreement and letter of credit does not constitute a pattern because it involved a single alleged fraud and a single victim). The Luis do allege, however, that Gold and the other Defendants committed similar acts of mail and wire fraud involving multiple victims throughout the United States. If some of

these other victims purchased stock or other securities, the fraud concerning them may also qualify as securities fraud under the 1933 and 1934 Acts. These acts were the subject of Ciro's internal investigation and were reported in the 8–K filing with the SEC. While all of Defendants' activities certainly do not present the most widespread and pervasive kind of pattern, it suffices for closed ended continuity.

In sum, then, the Luis have established the basis for a pattern of racketeering activity through their allegations of acts exhibiting closed-ended continuity.

### F. Predicate Acts

When a plaintiff alleges fraudulent acts as the predicate acts in his RICO claim, Fed. R.Civ.P. 9(b) "requires that circumstances constituting fraud be stated with particularity." *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988), *cert. denied,* 493 U.S. 858, 110 S.Ct. 168, 107 L.Ed.2d 124 (1989). The plaintiff "must state ... the specific content of the false representations." *Id.* at 1392–93.

In the instant case, the Luis point to the following indictable acts as predicate acts required under 18 U.S.C. § 1961: (1) mail fraud, in violation of 18 U.S.C. § 1341; (2) wire fraud, in violation of 18 U.S.C. § 1343; and (3) fraud in the sale of securities in violation of §§ 12(2) and 17 of the Securities Act of 1933, §§ 9 and 10(b) and Rule 10b–5, and §§ 18 and 20 of the Exchange Act of 1934. Amended Complaint at ¶¶ 106, 107.

#### 1. Securities Fraud

The Luis do not argue that the agreements entered into by Lui Ciro or their loan guarantees constitute securities under either the Securities Act of 1933 or the Securities and Exchange Act of 1934. Therefore, even if Gold had violated these laws, these violations could in no way have harmed the Luis.

#### 2. Mail and Wire Fraud

■ Mail and wire fraud have identical elements, except for the additional requirement of wire fraud that the wire communication cross state lines. *United States v. Brien,* 617 F.2d 299 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273

(1980). They require (1) a scheme or artifice to defraud by false representations or pretenses; (2) use of the mails or interstate wires; and (3) specific intent to defraud. *Sun Savings and Loan Assoc. v. Dierdorff,* 825 F.2d 187, 195 (9th Cir.1987).

■ As discussed above in the context of Rule 9(b), the Luis have shown that they are entitled to the *Wool v. Tandem* presumption of concerted activity, connecting Gold to the misstatements contained in certain documents sent by mail and facsimile at certain times alleged in the Amended Complaint. As also discussed above, the Amended Complaint pleaded with sufficient particularity the content of those misrepresentations. However, the transmission and mailing of these documents stand as the only predicate acts implicating Gold, given the Luis' failure to plead Gold's other alleged misrepresentations with particularity. Of course, any misrepresentations made by Gold during face to face meetings when he visited Hawaii would not qualify as predicate acts under RICO because they do not involve mail or wire fraud. *See, e.g., Fleet Credit Corp. v. Sion,* 893 F.2d 441, 445 (1st Cir.1990) (acts of common law fraud that do not implicate the mails or wires do not constitute racketeering activity). Moreover, the Amended Complaint fails to allege facts showing how its allegations of ongoing activity meet the definitions of any predicate acts. Merely breaching contracts does not qualify. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297 (7th Cir.), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1987) (circumventing noncompetition agreement not a predicate act).

Therefore, the court finds that the Amended Complaint does allege certain predicate acts, but only the specific instances of mail and wire fraud specified above.

### G. Conspiracy

■ The Amended Complaint does allege a conspiracy between Gold and the other Defendants to defraud the Luis. Amended Complaint at ¶¶ 104–105. To state a claim for RICO conspiracy where the predicate acts sound in fraud, the Luis must plead the conspiracy with the particularity required by

Rule 9(b). *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1520–21 (N.D.Cal. 1990). In other words, the Luis must allege with particularity (1) an agreement to participate in an unlawful act; and (2) an injury caused by an unlawful overt act performed in furtherance of the agreement. *Id.* Conclusory allegations that RICO defendants entered into an agreement are insufficient. *Id.* The allegation of conspiracy must state facts which put each defendant on notice as to how he allegedly joined the conspiracy. *Lewis v. Sporck*, 612 F.Supp. 1316, 1325 (N.D.Cal. 1985).

■ Here, the Amended Complaint nowhere alleges a specific agreement between Gold and the other Defendants to participate in an unlawful act. Faced with a conclusory allegation of conspiracy, all that Gold may do is deny that allegation. He cannot prepare a meaningful answer or meaningful defense. The conspiracy allegation therefore fails to meet the requirements of Rule 9(b).

### H. *Enterprise*

■ Essential to the proof of any RICO claim is the existence of an enterprise. *See Rae v. Union Bank*, 725 F.2d 478, 480–81 (9th Cir.1984) (affirming Rule 12(b)(6) dismissal of RICO claim for failure to meet enterprise requirement). There are two elements necessary to establish an enterprise under the RICO statute. First, the plaintiff must establish an enterprise having an existence "separate and apart" from the pattern of activity in which it is engaged. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Second, the plaintiff must also demonstrate the existence of an "ongoing" organization in which the various associates "function as a continuing unit." *Id.*

■ Gold challenges the separateness and distinctness of the RICO enterprise. Here, the alleged enterprise is an association in fact comprised of Ciro and its employees, including Gold. Gold argues that in this instance, the enterprise, Ciro and its associates, is not meaningfully distinct from the persons allegedly perpetrating the RICO violation, i.e., Ciro and/or Gold. Gold cites *Medallion Television Ent., Inc. v. SelecTV of California*, for the proposition that a corporation cannot at the same time be the RICO enterprise and the person sued under 18 U.S.C. § 1962. 627 F.Supp. 1290, 1294 (C.D.Cal.1986). The logic for this position is that the use of the term "enterprise" in RICO was meant to refer to an entity different from the person whose behavior the act was designed to prohibit. *Id.* at 1295. *Medallion Television* also states that a RICO plaintiff may not circumvent the enterprise requirement by merely alleging that the culpable person is not the corporation but its individual officers, employees or agents. *Id.* Because the Luis have alleged both that Gold is the culpable person and that he was an officer, agent and controlling shareholder of Ciro and that at all times he acted on Ciro's behalf, Gold would have the court conclude that the Luis have failed to allege an enterprise distinct from the person sued under 18 U.S.C. § 1962(c).

It is apparent, however, that the Ninth Circuit Court of Appeals has recently rejected this analysis. In *Sever v. Alaska Pulp Corp.*, *supra*, 978 F.2d 1529, the court found that where the complaint alleged that the corporation was the enterprise and that individual officers and employees of the corporation were the culpable persons, the complaint stated a proper enterprise under RICO. *Id.* at 1534. The key is that the enterprise " 'be either formally (as when there is a corporation) or practically (as when there are other people beside the proprietor working in the organization) separable from the individual.' " *Id.* (quoting *United States v. Benny*, 786 F.2d 1410 (9th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986)). *See also Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 646 (7th Cir.1995) ("When the enterprise is a corporation or distinct business entity and the person is someone managing it, we have found distinct and separate entities and accordingly have held the defendant liable."). The court therefore finds that Plaintiffs have stated a proper RICO enterprise.

For the aforementioned reasons, the court dismisses Plaintiffs' RICO claim without prejudice.

### III. State Law Claims

#### A. *Fraud*

Gold moves for dismissal of Plaintiffs' state law fraud causes of action. Specifically, Counts II through VIII, XII, XIII, XVI and XVIII allege fraud under state law.

Gold alleges that each count fails to meet the particularity requirements of Rule 9(b). The court addresses each count in turn.

■ Count II alleges that Defendants provided the Luis with false and misleading documents which inaccurately stated Ciro's financial condition. The Luis purportedly relied upon these documents in making the decision to enter into the Ciro franchise agreements and in determining to guarantee the various loans and promissory notes. Each of these allegations is particularized as to the date and means of transmission, Amended Complaint at ¶ 30, and as to the reasons why those documents were misleading. *See, e.g.,* Amended Complaint at ¶¶ 27–28. Accordingly, the court finds that Count II sufficiently particularizes its allegation of fraud.

■ Count III alleges fraudulent non-disclosure. As described *supra,* the 8–K Report describes certain criminal conduct by Defendants. The Luis assert that Defendants therefore had knowledge of their wrongdoing which they were obligated to disclose to the Luis at the time the Luis entered into the Ciro franchise agreements. The court finds that this allegation sufficiently particularizes the material facts in the Defendants' knowledge, namely the criminal conduct disclosed in the 8–K report, which Defendants should have disclosed to the Luis. Accordingly, Count III survives the motion to dismiss.

■ Counts IV and V allege the fraudulent conversion of funds. Each count asserts that Defendants commingled funds belonging to the Ciro franchise stores with the general accounts of Ciro. The Luis do not provide any details as to the nature of this conversion. Their bland allegation is insufficient. Therefore, the court dismisses Counts IV and V without prejudice.

■ Count VI alleges that Defendants falsely stated that $350,000 had been expended by Ciro and/or Bondstreet for capital improvements to the Ala Moana store. The Luis assert on information and belief that Defendants did not spend this amount on capital improvements. This assertion is insufficient. The Luis must set forth the factual basis as to why this representation was misleading to survive a motion to dismiss. Accordingly, the court dismisses Count VI without prejudice.

■ Count VII alleges promissory fraud, repeating the charge that Gold promised to repurchase the franchise interests and assume the Luis' obligations if the Luis were dissatisfied. As discussed *supra,* the Amended Complaint does not sufficiently indicate why this promise was misleading. Therefore, the court dismisses Count VII without prejudice.

■ Count VIII alleges that Defendants misrepresented the gold and silver content of jewelry they supplied to the Luis. The Amended Complaint does not provide any explanation as to the factual basis behind this allegation. No details are given as to how the Luis arrived at this conclusion that the jewelry was neither gold nor silver, nor as to the communications which induced the Luis to purchase this jewelry. Accordingly, the court dismisses Count VIII without prejudice.

■ Count XII alleges that Defendants provided a false Franchise Offering Circular which induced the Luis into entering into the Ciro franchise agreements. This count states that Defendants on December 26, 1991 provided a Franchise Offering Circular and certain financial statements to the Luis, and that both the Franchise Offering Circular and the financial statements contained false information. The Franchise Offering Circular falsely stated that no officer of Ciro had been adjudged bankrupt when in fact Levine had been so adjudged. The financial statements contained false information, as detailed *supra.* Accordingly, Count XII is properly particularized.

Count XIII is a claim under H.R.S. ch. 482E, which governs the sale of franchises. The court addresses this claim, *infra.*

Count XVI is a claim for unfair trade practices under H.R.S. § 482E–6(2)(C), H.R.S. § 482E–9(a), and H.R.S. ch. 480. The court addresses this claim, *infra.*

■ Count XVIII is a claim under the Hawaii Organized Crime Statute, H.R.S. Ch. 842. The court finds that the deficiencies in the Luis' RICO claim are also fatal to Count VIII. *See Nakamoto v. Hartley,* 758 F.Supp. 1357, 1367 (D.Haw.1991) (noting that Hawaii state courts have looked to RICO precedents in interpreting H.R.S. Ch. 842). Therefore, the court dismisses Count XVIII without prejudice.

### B. *Tortious Interference with Contractual Relations*

■ Count XI alleges that Gold, Levine and Rubin tortiously interfered with the Luis' contracts with Ciro. Gold alleges that a director or officer may not be liable for tortiously interfering with the corporation's contract unless the director or officer acts solely for his personal benefit. Hawaii law is unclear on this point and states blandly that directors and officers may be liable for tortious interference where the director acts intentionally and is not merely asserting the corporation's contractual right. *Burgess v. Arita,* 5 Haw.App. 581, 704 P.2d 930 (1985). However, other jurisdictions suggest that there must be some improper motive on the part of the director or officer. *See, e.g., Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.Ct. App.1985) (officer or director may be liable for tortious interference where solely motivated by desire to induce corporation to breach contract with plaintiff); *Olympic Fish Products, Inc. v. Lloyd,* 93 Wash.2d 596, 611 P.2d 737, 739 (1980) (employee may be liable where employee's actions taken in pursuit of personal gain); *see also Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 327–328 (9th Cir.1982) (where employee is motivated, at least in part, to benefit corporation, his actions in inducing breach of contract are privileged).

Here, the Amended Complaint alleges that Gold, Levine and Rubin's actions in inducing Ciro to breach its contractual obligations "were taken in pursuit of personal goals and/or gain." Amended Complaint at ¶ 188. Accordingly, the Luis have stated a claim for tortious interference with contract.

### C. *Breach of Fiduciary Duty*

■ Count XXI alleges that Gold breached a fiduciary duty to the Luis. Gold argues that a corporation's employees owe no independent fiduciary duty to third parties with whom they deal on behalf of their employer. *See Slottow v. American Casualty Co.,* 10 F.3d 1355, 1359 (9th Cir.1993). However, *Slottow* recognized an exception where the corporation's employee participates in the wrongful conduct alleged. *Id.* (*citing Self–Insurers' Security Fund v. ESIS,* 204 Cal. App.3d 1148, 1162–63, 251 Cal.Rptr. 693 (1988).

Here, the court finds that the Luis have properly alleged that Gold participated in the wrongful conduct alleged. Therefore, Count XXI survives the instant motion to dismiss.

### D. *Covenant of Good Faith and Fair Dealing*

■ Count XX alleges that Gold breached the covenant of good faith and fair dealing. The court implies such a covenant as between the franchisor, Ciro, and its franchisee, Lui Ciro. *See Conoco, Inc. v. Inman Oil Co., Inc.,* 774 F.2d 895, 908 (8th Cir.1985); *see also* H.R.S. § 482E–6(1) (parties to franchise relationship "shall deal with each other in good faith."). Gold argues that as he was not a party to the franchise agreement, he may not be held liable for a breach of the covenant of good faith and fair dealing.

The Luis attempt to argue that the same rationale which supports their claim for breach of fiduciary duty as against Gold applies to the claim for breach of the covenant of good faith and fair dealing. The key difference, however, is that a claim for breach of the implied covenant sounds in contract, not in tort. Because Gold was not a party to the franchise agreements, there was no covenant as between Gold and the Luis.

The court therefore dismisses with prejudice Count XX.

### E. *Mental Distress*

 Under Hawaii law, recovery for intentional infliction of emotional distress is available only if the alleged tortfeasor's conduct was "unreasonable." *Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc.,* 76 Hawai'i 454, 465, 879 P.2d 1037, 1048 (1994) (citations omitted). To be unreasonable, the act must be without just cause or excuse and beyond all bounds of decency: it must be "outrageous." *Id.* (citing *Chedester v. Stecker,* 64 Haw. 464, 468, 643 P.2d 532, 535 (1982)). The court finds that the allegations about the Defendants' acts fall within the meaning of outrageous conduct as set forth by the Hawaii Supreme Court. Therefore, the Luis' claim for intentional infliction of emotional distress stands.

 The Luis also state a claim for negligent infliction of emotional distress. Recovery may be allowed without a showing of physical injury to the claimant. *Campbell v. Animal Quarantine Station,* 63 Haw. 557, 560, 632 P.2d 1066, 1068 (1981) (damages awarded in death of dog); *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970). However, the Hawaii Supreme Court has held that "recovery for negligent infliction of emotional distress by one not physically injured is generally permitted only when there is 'some physical injury to property or a person' resulting from the defendant's conduct." *Ross,* 76 Hawai'i at 465–66, 879 P.2d at 1048–49 (quoting *Chedester,* 64 Haw. at 468, 643 P.2d at 535). In addition a recent Hawaii statute provides that one who is not physically injured or suffering from mental illness may not recover for negligent infliction of emotional distress "if the distress or disturbance arises solely out of damage to property or material objects." Haw.Rev. Stat. s. 663–8.9 (Supp.1992). Because the Luis do not allege any physical injury, there can be no recovery for their claim of negligent infliction of emotional distress. Accordingly, the court grants dismissal of Plaintiffs' claim for negligent infliction of emotional distress but denies dismissal of Plaintiffs' claim for intentional infliction of emotional distress.

### F. *H.R.S. §§ 480 and 482E*

In Count XVII, Plaintiffs allege that Defendants engaged in unfair trade practices or unfair methods of competition in violation of H.R.S. § 482E–6(2)(C), H.R.S. § 482E–9(a), and H.R.S. Ch. 480. Gold argues that Plaintiffs lack standing to maintain these claims.

#### 1. Plaintiffs' Standing to Sue for Deceptive Practices

 H.R.S. Ch. 480 prohibits unfair methods of competition ("unfair competition") and deceptive acts or practices ("deceptive practices"). Gold claims that standing to sue for deceptive practices under H.R.S. Ch. 480 is limited under H.R.S. § 480–2(d) to "consumer[s], the attorney general or the director of the office of consumer protection."

Plaintiffs argue that the Franchise Investment Law, H.R.S. Ch. 482E, creates a private cause of action for franchisees under Ch. 480 for certain deceptive practices. H.R.S. § 482E–9(a) states: "The commission of any unfair or deceptive acts or practices or unfair methods of competition prohibited by section 482E–6 shall constitute an unfair or deceptive act or practice under chapter 480." Plaintiffs argue that the limitations of H.R.S. § 480–2(d) do not govern an action for deceptive practices under H.R.S. § 482E–9(a).

The court finds that H.R.S. § 482E–9(a) does not create a private cause of action for franchisees with respect to deceptive practices. H.R.S. § 482E–9(a) does not itself confer any private right of action; rather, it states that the commission of a prohibited practice is a deceptive practice under H.R.S. ch. 480. To determine if there is a private right of action, the court must look to the relevant standing provisions of H.R.S. § 480–2(d). As noted above, H.R.S. § 480–2(d) limits standing to consumers, the attorney general, and the director of the office of consumer protection.

Such a reading of the interrelationship between H.R.S. ch. 480 and ch. 482E does not render H.R.S. § 482E–9(a) meaningless. To the contrary, H.R.S. § 482E–9(a) allows the attorney general and the director of the office of consumer protection to enforce the

provisions of H.R.S. ch. 480 against those franchisors who commit deceptive practices.

Accordingly, unless Plaintiffs are consumers within the meaning of H.R.S. Ch. 480, they lack standing to sue for deceptive practices.

#### a. Lui Ciro

■ Gold argues that Lui Ciro lacks standing to pursue a claim for deceptive practices. Chapter 480 defines a "consumer" as "[a] natural person ... who commits money, property, or services in a personal investment." H.R.S. § 480–1. It is evident that Lui Ciro lacks standing to sue for deceptive practices under H.R.S. ch. 480.

#### b. The Luis

■ The next issue is whether the Luis are properly consumers. The Luis argue that they have made a personal investment. *Paulson, Inc. v. Bromar, Inc.,* 775 F.Supp. 1329 (D.Haw.1991), however, forecloses this argument. In *Paulson,* the court dismissed a claim under H.R.S. Ch. 480 brought by two shareholders of a corporation which had been harmed by a deceptive trade practices of another corporation. In holding that the shareholders lacked standing, the court stated:

> However, the legislative history of § 480–2 clearly indicates that the purpose of defining a "consumer" as "[a] natural person ... who commits money, property, or services in a personal investment" was to protect "people who had invested in bogus financial schemes," not to protect shareholders whose corporations had been harmed by a deceptive practice of another business.

*Id.* at 1339. The only injury suffered by the shareholders in *Paulson* as a result of defendant's deceptive practices was the diminution in the value of their stock.

The injury alleged here stems from a purported discrimination against the Ciro franchise stores in terms of the supply of inventory. Amended Complaint at ¶¶ 221–223. As was the case in *Paulson,* the harm suffered by the Luis arises indirectly, as a result of the harm done to Lui Ciro. Accordingly, the Luis lack standing to sue for de-

ceptive practices. The court therefore dismisses with prejudice the Luis' claim for deceptive practices.

#### 2. Plaintiffs' Standing to Sue for Unfair Competition

■ However, Plaintiffs have also claimed unfair competition in violation of H.R.S. ch. 480. Amended Complaint at ¶ 223. The limitation on standing in H.R.S. § 480–2(d) does not apply to a corporation's claims for unfair competition. Rather, the general grant of standing in H.R.S. § 480–13 applies to such claims. *See Paulson, Inc. v. Bromar, Inc.,* 775 F.Supp. 1329, 1338 (D.Haw.1991) (notwithstanding limitation of standing to "consumers" for deceptive practices actions, business may still maintain an action for unfair competition claims under H.R.S. §§ 480–2(a), 480–13); *Robert's Waikiki U–Drive, Inc. v. Budget Rent–A–Car Systems,* 491 F.Supp. 1199 (D.Haw.1980), aff'd, 732 F.2d 1403 (9th Cir.1984) (H.R.S. § 480–13 creates private right of action for unfair competition); *but see Dash v. Wayne,* 700 F.Supp. 1056 (D.Haw.1988) (no private right of action for unfair competition).

■ The court reads the allegations as to discrimination as falling within H.R.S. § 482E–6(2)(C)'s definition of unfair methods of competition: "... it shall be an unfair or deceptive act or practice or an unfair method of competition for a franchisor or subfranchisor to ... [d]iscriminate between franchisees in the charges offered or made for royalties, goods, services, equipment, rentals, advertising services, *or in any other business dealing.*" *Id.* (emphasis added). Therefore, Plaintiffs have stated a claim for unfair competition. Accordingly, the court dismisses with prejudice Plaintiffs' claim for deceptive practices, but denies dismissal of their claim for unfair competition.

#### 3. H.R.S. Ch. 482E

Gold blandly states that the Amended Complaint does not indicate any participation by Gold in activities prohibited by H.R.S. Ch. 482E. Count XVII, however, clearly alleges that Gold caused Ciro to intentionally discriminate against the three resort stores owned by Plaintiffs in the supplying of inven-

tory. As noted, *supra*, this activity falls within the scope of H.R.S. § 482E–6(2)(C). Accordingly, Plaintiffs have stated a claim for liability under H.R.S. § 482E–9.

## IV. Leave to Amend

The court grants the Lui's motion for leave to amend except with respect to those counts which have been dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, the court GRANTS the motion to dismiss Count XX (breach of covenant of good faith) with prejudice.

The court GRANTS the motion to dismiss with prejudice Count XVII's claim for deceptive practices. However, the court DENIES the motion to dismiss Count XVII's claims for unfair competition and for violation of H.R.S. Ch. 482E.

The court GRANTS the motion to dismiss with prejudice Count XIX's claim for negligent infliction of emotional distress but DENIES the motion to dismiss Count XIX's claim for intentional infliction of emotional distress.

The court GRANTS Defendant's motion to dismiss Counts I (RICO), IV, V, VI, VII, VIII (fraud), and XVIII (H.R.S. Ch. 842). This dismissal is without prejudice.

The court DENIES Defendant's motion to dismiss Counts II, III, and XII (fraud). The court further DENIES his motion to dismiss Counts XI (tortious interference with contract) and XXI (breach of fiduciary duty).

Finally, the court GRANTS the Luis' motion for leave to amend.

IT IS SO ORDERED.