114 P.3d 929

**JOY A. McELROY, M.D., INC., a Hawai'i Corporation, LOI Chang–Stroman, and Joy McElroy, Plaintiff–Appellees,**

v.

**MARYL GROUP, INC., a Hawai'i corporation (formerly known as Maryl Development, Inc.) doing business as Maryl Realty, Defendant–Appellant,**

and

**John Does 1–5, Jane Does 1–5; Doe Corporations 1–5; and Doe Entities 1–5, Defendants.**

No. 24206.

Intermediate Court of Appeals of Hawai'i.

May 26, 2005.

As Amended June 14, 2005.

---

S.V. (Bud) Quitiquit, R. Laree McGuire, Honolulu, and Charles M. Heaukulani (Brooks Tom Porter & Quitiquit, LLP), on the briefs, Kailua Kona, for defendant-appellant.

Joseph Fagundes, III, Kailua Kona, and Stephen M. Koolpe, on the briefs, for plaintiffs-appellees.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Maryl Group, Inc. (Maryl) appeals from the Judgment filed on January 5, 2001 in the Circuit Court of the Third Circuit (circuit court).[1]

Judgment was entered as follows:

1. Count I. On Count I, alleging misrepresentation, judgment is entered in favor of Plaintiffs Joy A. McElroy, M.D., Inc. and Loi Chang–Stroman, and against Defendant Maryl Group, Inc., in the amount of $125,000.00.

2. Count II. Plaintiffs' Count II, alleging breach of duty, is dismissed with prejudice by stipulation of the parties.

---

1. The Honorable Ronald Ibarra presided.

3. Count III. On Count III, alleging intentional misrepresentation, judgment is entered in favor of Defendant Maryl Group, Inc., and against Plaintiffs Joy A. McElroy, M.D., Inc. and Loi Chang–Stroman.

4. Count IV. Plaintiffs' Count IV, seeking re[s]cission, is dismissed with prejudice pursuant to the exclusive election of remedies by Plaintiffs Joy A. McElroy, M.D., Inc. and Loi Chang–Stroman, and pursuant to the ["]Declaration Of Joseph Fagundes, III Re Election Of Remedies["] dated December 5, 2000 [filed December 6, 2000].

5. Count V. On Count V, seeking an award of punitive damages, judgment is entered in favor of Plaintiffs Joy A. McElroy, M.D., Inc. and Loi Chang–Stroman, and against Defendant Maryl Group, Inc., in the amount of $200,000.

6. Count VI. Plaintiffs' Count VI, alleging breach of contract, is dismissed with prejudice by stipulation of the parties.

7. Count VII. Plaintiffs' Count VII, alleging breach of contract, is dismissed with prejudice by stipulation of the parties.

8. Count VIII. Plaintiffs' Count VIII, alleging unfair/deceptive trade practices, is dismissed with prejudice pursuant to the exclusive election of remedies by Plaintiffs Joy A. McElroy, M.D., Inc. and Loi Chang–Stroman, and pursuant to the ["]Declaration Of Joseph Fagundes, III Re Election Of Remedies["] dated December 5, 2000 [filed December 6, 2000].

9. On all claims brought by Plaintiff Joy A. McElroy against Defendant Maryl Group, Inc., judgment is entered in favor of Defendant Maryl Group, Inc., and against Plaintiff Joy A. McElroy.

10. Costs as taxed by the Clerk in the amount of $1,544.33 awarded in favor of Plaintiffs Joy A. McElroy, M.D., Inc. and Loi Chang–Stroman and against Defendant Maryl Group, Inc.

11. There are no remaining parties and/or issues. Pursuant to Haw. R. Civ. P. 54(b), the foregoing shall be considered a final order and judgment.

On appeal, Maryl contends the circuit court erred by (1) denying Maryl's Motion to Strike Jury Demand; (2) denying Maryl's Motion to Dismiss or, in the Alternative, for Summary Judgment; (3) denying Maryl's motion for directed verdict; (4) instructing the jury on punitive damages where the evidence did not support an award of punitive damages; (5) denying Maryl's Motion for Judgment After Trial; and (6) denying Maryl's Motion for Attorneys' Fees, Costs and Expenses.[2] We vacate and remand.

## I.

In early 1996, Loi Chang–Stroman (Chang–Stroman) began preliminary negotiations with Mark Richards and Edward Rapoza, representatives of Maryl (formerly known as Maryl Development, Inc.) to lease space in the Crossroads Medical Center (Crossroads Center). On April 22, 1996, Chang–Stroman signed a non-binding proposal (Proposal) to lease space in the Crossroads Center, which had yet to be constructed.

---

**2.** Counsel for Defendant–Appellant Maryl Group, Inc. (Maryl) fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4), which states in relevant part that each point of error in the concise statement of the points of error

> shall state: (i) the alleged error committed by the court or agency; (ii) *where in the record the alleged error occured;* and (iii) *where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.*
> . . . .
> Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented.

(Emphasis added.)

Additionally, counsel fails to comply with HRAP Rule 28(b)(3), which states in relevant part that "[t]here shall be appended to the brief a copy of the judgment, decree, findings of fact and conclusions of law, order, opinion or decision *relevant to any point on appeal,* unless otherwise ordered by the court." (Emphasis added.) Counsel failed to attach the order denying Maryl's Motion to Strike Jury Demand and the order granting in part and denying in part Maryl's Motion to Dismiss or, In the Alternative, for Summary Judgment.

Counsel is warned that future non-compliance with HRAP Rules 28(b)(3) and (4) may result in sanctions against her.

On July 5, 1996, Chang–Stroman, as an officer of Joy A. McElroy, M.D., Inc. (McElroy Inc.), executed a Lease Agreement (Lease) on behalf of McElroy Inc. with Maryl for space at the Crossroads Center. Prior to executing the Lease, Chang–Stroman retained legal counsel to make sure the Lease was consistent with the Proposal. Also on July 5, 1996, Chang–Stroman and Joy A. McElroy (McElroy) signed a Guaranty of Lease (Guaranty), in which they personally guaranteed payment on the Lease.

The common area maintenance (CAM) fee estimate for Crossroads Center in the Proposal was $0.20 per square foot per month. The CAM fee estimate in the Lease at the time of execution was $0.25 per square foot per month. McElroy Inc. moved into the Crossroads Center in early September 1997. From September through December 1997, McElroy Inc. paid a CAM fee of $0.25 per square foot per month.

In January 1998, Maryl charged McElroy Inc. a CAM fee of $0.51 per square foot per month. On January 30, 1998, Maryl sold the Crossroads Center to Lau Enterprises. At the end of March 1998, the CAM fee was increased to $0.56 per square foot per month. In the latter part of April 1998, the CAM fee was increased to $0.62 per square foot per month.

On July 14, 1999, McElroy Inc., Chang–Stroman, and McElroy (collectively, Plaintiffs) filed a Complaint against Maryl, alleging the following:

Count I: Maryl misrepresented the amount of the anticipated CAM fee;

Count II: "Maryl breached its duty to perform or make a good faith estimate upon which to base its representations" of the amount of the CAM fee;

Count III: Maryl intentionally misrepresented the CAM fee;

Count IV: Plaintiffs were entitled to rescission of the Lease;

Count V: Plaintiffs were entitled to punitive damages as a result of Maryl's conduct;

Count VI: Maryl breached its contractual duty to act in good faith;

Count VII: Maryl breached its agreement with Plaintiffs not to charge the CAM fee at a rate greater than $.25 per square foot; and

Count VIII: Maryl engaged in unfair/deceptive trade practices, under Hawaii Revised Statutes (HRS) Chapter 480, because its CAM fee representations were false.

Plaintiffs also asked for an award of their attorney's fees and costs and demanded a jury trial.

On August 24, 1999, Maryl filed a Motion to Strike Jury Demand. Plaintiffs filed their memorandum in opposition on September 2, 1999. On October 22, 1999, the circuit court filed an "Order Denying Defendant Maryl Group, Inc.'s Motion to Strike Jury Demand." The circuit court found that an ambiguity existed within the Lease and the Guaranty as to whether misrepresentations made before the formation of the Lease were covered by the jury waiver clause.

On September 19, 2000, Maryl filed its "Motion to Dismiss or, in the Alternative, for Summary Judgment" (Motion to Dismiss/Summary Judgment). Maryl argued that Plaintiffs' entire suit should be dismissed because Plaintiffs failed to state a claim upon which relief could be granted and there were no genuine issues as to any material fact. On October 4, 2000, Plaintiffs filed their "Memorandum in Opposition to Defendant Maryl Group, Inc.'s Motion to Dismiss or, in the Alternative, for Summary Judgment, Filed September 19, 2000" (Opposition Memorandum). Maryl filed its "Reply Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment" (Reply Memorandum) on October 10, 2000. The circuit court held a hearing on the Motion to Dismiss/Summary Judgment on October 13, 2000.

On October 17, 2000, the circuit court filed its "Order Granting in Part and Denying in Part Defendant Maryl Group, Inc.'s Motion to Dismiss or[,] in the Alternative, for Summary Judgment" (Order). The circuit court granted Maryl's motion on the issue of punitive damages from the breach of contract claim, but denied Maryl's motion with regard to the other issues.

On October 24, 2000, Maryl filed a "Motion for Reconsideration of Order Granting in Part and Denying in Part Defendant Maryl Group, Inc.'s Motion to Dismiss[,] or in the Alternative, for Summary Judgment and/or For Certification Pursuant to Haw. R. Civ. P. 54(b)" (Motion for Reconsideration). In its motion, Maryl asked the circuit court to reconsider its decision with respect to Counts II, VI, VII, and VIII. Maryl also asked the circuit court to prepare findings of fact and conclusions of law and to certify the Order pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b).

On October 31, 2000, Plaintiffs filed their memorandum in opposition to the Motion for Reconsideration. Plaintiffs argued that the motion should be denied because Maryl failed to provide a basis upon which an order for reconsideration could be granted. Plaintiffs also argued that Maryl's request for certification should be denied because Maryl failed to show how an interlocutory appeal would more speedily determine the litigation.

At the November 3, 2000 hearing on the Motion for Reconsideration, the circuit court orally denied Maryl's motion because Maryl did not present its motion under any of the grounds provided in HRCP Rule 60. The circuit court also orally denied Maryl's request for certification.

Jury trial began on November 8, 2000. After Plaintiffs rested their case on November 15, 2000, Maryl made a motion for directed verdict, which was denied by the circuit court. After Maryl rested its case but before the jury was instructed, Plaintiffs withdrew the contract claims made in Counts II, VI, and VII of their Complaint.

During the settlement of jury instructions, Maryl objected to the proposed jury instructions regarding punitive damages, but the circuit court instructed the jury over the objection. Maryl also asked the circuit court to reconsider Maryl's motion for directed verdict. The circuit court granted Maryl a directed verdict only with respect to McElroy on all counts.

The jury reached its verdict on November 21, 2000, finding in favor of Plaintiffs on the negligent misrepresentation claim (Count I),

punitive damages claim (Count V), and unfair/deceptive trade practices claim (Count VIII), and against Plaintiffs on the intentional misrepresentation/fraud claim (Count III).

On December 6, 2000, Plaintiffs' counsel filed a declaration regarding election of remedies, stating that (1) Plaintiffs elected to accept the jury's award of monetary damages for the negligent misrepresentation claim and award of punitive damages, and (2) if the circuit court issued judgment in the amount of the elected remedies, Plaintiffs would withdraw their claim for the equitable relief of rescission and waive their claim to the jury's award of damages for the unfair/deceptive trade practices claim.

On January 5, 2001, the circuit court filed the Judgment. On January 12, 2001, Maryl filed a Motion for Judgment After Trial, asking for judgment in favor of Maryl on the punitive damages claim. On January 25, 2001, Maryl filed a Motion for Attorneys' Fees, Costs and Expenses. The circuit court filed its "Order Denying Defendant Maryl Group, Inc.'s Motion for Judgment After Trial and Defendant Maryl Group, Inc.'s Motion for Attorneys' Fees, Costs and Expenses" on March 15, 2001. Maryl timely filed this appeal.

## II.

### A. Motion to Strike Jury Demand

■ [T]he constitutional right to a jury trial in civil cases is a mere privilege, and as such is capable of being waived. It is well-settled that such right may be waived in civil cases, and that it may be waived by actions or conduct as well as expressly[.] . . . And this principle applies whether the failure to claim such right is intentional or inadvertent.

. . . .

It is well-established that trial by jury being a constitutional and fundamental right, courts indulge every reasonable presumption against the waiver of such right; and in order to create a waiver by implication[,] unequivocal acts are necessary to be shown. It has also been held that a waiver of a jury trial will not be implied in doubtful cases.

*Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 300, 305–06, 944 P.2d 97, 102–03 (App.1997) (internal quotation marks, citations, brackets in original, and ellipsis in original omitted) (quoting *Seong v. Trans–Pacific Airlines, Ltd.*, 41 Haw. 231, 240 & 242 (1955)).

### B. Interpretation of Lease Provision

■■■ A lease is reviewed under the principles of contract law when the issue involves the interpretation of a lease provision. *Pancakes of Hawaii*, 85 Hawai'i at 304, 944 P.2d at 101. "Generally the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." *Id.* (internal quotation marks and citation omitted).

### C. Summary Judgment

"We review the circuit court's grant or denial of summary judgment de novo." *Querubin v. Thronas*, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)). The Hawai'i Supreme Court has often articulated that

> summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Querubin*, 107 Hawai'i at 56, 109 P.3d at 697 (quoting *Durette*, 105 Hawai'i at 501, 100 P.3d at 71).

Hawai'i Rules of Civil Procedure Rule 56(e) provides in relevant part:

> **Rule 56. Summary judgment.**
>
> . . . .

> *(e) Form of affidavits; further testimony; defense required.* . . . When a motion for summary judgment is made . . ., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, "[a] party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, 'nor is [the party] entitled to a trial on the basis of a hope that [the party] can produce some evidence at that time.'" *Henderson v. Prof'l Coatings Corp.*, 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2727 (1983)).

### D. Statutory Construction

Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

> [O]ur foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists[.]

> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative in-

tent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

*Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawaii 178, 111 P.3d 587, 592 (2005) (internal quotation marks, brackets and ellipses omitted) (quoting *Guth v. Freeland,* 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–95 (2001)).

### III.

### A. Maryl's Motion to Strike Jury Demand

Maryl contends the circuit court erred by denying its Motion to Strike Jury Demand. Maryl argues that McElroy Inc. waived its right to a jury trial under the provisions of the Lease and Chang–Stroman waived his right to a jury trial by signing the Guaranty for the Lease. Plaintiffs contend they did not waive their right to a jury trial because the alleged misrepresentation occurred before the signing of the Lease so the controversy did not arise out of the Lease, making the jury waiver provisions in the Lease and Guaranty inapplicable.

 A lease is reviewed under the principles of contract law when the issue involves the interpretation of a lease provision. *Pancakes of Hawaii,* 85 Hawai'i at 304, 944 P.2d at 101.

Generally, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court.

Our goal when interpreting a contractual provision is to determine the intention of the parties. The intention of the parties is to be gathered from the whole instrument, and if this cannot be discovered, but there exists an ambiguity, then such construction must prevail as is most strong against the covenanter.... [T]he terms of a contract should be interpreted according to their plain, ordinary, and accepted use in common speech, unless the contract indicates a different meaning.

*Id.* at 305–06, 944 P.2d at 101–02 (internal quotation marks and citations omitted).

 The right to a jury trial may be waived, but an unequivocal act is necessary to show the right has been waived because there is a presumption against waiver. *Id.* at 306, 944 P.2d at 103. A stranger to a contract cannot use a waiver of jury trial in a contract to shield the stranger from a jury trial. *Id.* at 306–09, 944 P.2d at 103–06.

#### 1. McElroy Inc.'s Waiver of Right to Jury Trial

 Maryl contends McElroy Inc. waived its right to a jury trial when it entered into the Lease. McElroy Inc. contends the language of the jury trial waiver provision in the Lease is ambiguous as to whether misrepresentations made before the execution of the Lease arise out of or under the terms of the Lease and, therefore, there was no waiver of the right to a jury trial.

McElroy Inc.'s assertion that the misrepresentation claim does not arise out of nor is in any way connected to the Lease is without merit. The Lease stated in relevant part:

> 21. *Default.*
>
> . . . .
>
> d. *Waiver of Jury Trial and Venue.* The parties each hereby waive trial by jury in any action, proceeding or counterclaim brought by either against the other on any matter whatsoever arising out of or in any way connected with this Lease or Tenant's use or occupancy of the Premises, including any claim of injury or damage, and any emergency and other statutory remedy with respect thereto. The parties also agree that the venue of any such action, proceeding or counterclaim shall be in the Kona Division of the District or Circuit Court of the Third Circuit, as appropriate.

The plain and ordinary meaning of "any matter whatsoever arising out of or in any way connected with this Lease" includes McElroy Inc.'s claim of misrepresentation of the estimated CAM fee in relation to the actual CAM fee charged under the Lease. There is no ambiguity in the language of the jury waiver provision in the Lease. The jury waiver provision covers the alleged misrepresentation of the estimated CAM fee made before the execution of the Lease. The cir-

cuit court erred by denying Maryl's motion to strike the jury demand of McElroy Inc.

### 2. Chang–Stroman's Waiver of Right to Jury Trial

■ Chang–Stroman claims that he, individually, had a cause of action against Maryl for misrepresentation.[3] He asserts that he was not a party to the Lease between McElroy Inc. and Maryl, thus making McElroy Inc.'s waiver of jury trial unenforceable against him as a stranger to the Lease under *Pancakes of Hawaii.*

■ "[S]tockholders and guarantors of a corporation do not have the right to pursue an action on their own behalf when the cause of action accrues to the corporation." *Kondelik v. First Fid. Bank of Glendive,* 259 Mont. 446, 857 P.2d 687, 692 (1993). Chang–Stroman signed the lease on behalf of McElroy Inc. as an officer of the corporation. Chang–Stroman was not a party to the Lease between McElroy Inc. and Maryl. Chang–Stroman, individually, had no right to sue Maryl for any misrepresentation made to McElroy Inc. that may have induced McElroy Inc. to enter into the Lease. There is no evidence in the record to indicate that Chang–Stroman was negotiating for anyone but McElroy Inc. Chang–Stroman did not have a cause of action as an individual stockholder or guarantor for any cause of action accruing to McElroy Inc. based on misrepresentations made to McElroy Inc.

■ Chang–Stroman may have had standing as a guarantor of McElroy Inc.'s Lease. However, the "general rule is that the doctrine of standing prohibits a litigant from asserting another's legal right. No right exists under a guaranty contract to assert the rights of the principal debtor other than a right to raise defensively the claims of the principal debtor." *Miller v. U.S. Bank of Washington, N.A.,* 72 Wash.App. 416, 865 P.2d 536, 542 (Wash.1994). Chang–Stroman admitted that he personally guaranteed McElroy Inc.'s Lease. Therefore Chang–Stroman, as a guarantor, could only assert

the same claims as McElroy Inc. "The respective rights of the guarantor and the creditor are determined by reference to the terms of the contract between them." *Sunwest Bank of Clovis, N.A. v. Garrett,* 113 N.M. 112, 823 P.2d 912, 916 (1992). Nothing in the Guaranty gave Chang–Stroman more rights than those given to McElroy Inc. in the Lease. As a guarantor of the Lease who was intervening on behalf of McElroy Inc., Chang–Stroman had no individual cause of action against Maryl.

■ "[A] guarantor must show a distinct and different injury before an independent action can be maintained." *Miller,* 865 P.2d at 541. Chang–Stroman had to show that Maryl made a representation of material fact for the purpose of inducing him to sign the Guaranty, which fact was known to be false by Maryl but reasonably believed true by Chang–Stroman and upon which Chang–Stroman relied and acted to his damage. *Pancakes of Hawaii,* 85 Hawai'i at 312, 944 P.2d at 109. Assuming, arguendo, this showing was made, Chang–Stroman waived the right to a jury trial by signing the Guaranty. The Guaranty stated in relevant part:

> As further inducement to Landlord [Maryl] to make this Lease and in consideration thereof, Landlord and the undersigned Guarantor(s) covenant and agree that in any action or proceeding brought by either Landlord or the undersigned Guarantor(s) against the other on any matters whatsoever arising out of, under or by virtue of the terms of the Lease or this Guaranty, that Landlord and the undersigned Guarantor(s) shall and do hereby waive trial by jury.

As stated, the alleged misrepresentation arises out of, under or by virtue of the Lease. The plain meaning of the language "any matters whatsoever arising out of, under or by virtue of the terms of the Lease or this Guaranty" means that Chang–Stroman's individual claim of misrepresentation was covered by the jury trial waiver in the Guaranty. The language of the jury trial waiver in the

---

**3.** In Maryl's Opening Brief, Maryl makes no argument regarding the Motion to Strike Jury Demand as it applies to Joy A. McElroy (McElroy). Although HRAP Rule 28(b)(7), states that "[p]oints not argued may be deemed waived," we note that the discussion with respect to Loi Chang–Stroman (Chang–Stroman) applies to McElroy.

Guaranty is not ambiguous. The circuit court erred by denying Maryl's motion to strike the jury demand of Chang–Stroman.

### B. Maryl's Motion to Dismiss/Summary Judgment

Maryl contends the circuit court erred by denying its Motion to Dismiss/Summary Judgment. Maryl argues the circuit court should have dismissed the negligent misrepresentation and punitive damages claims (Counts I and V) because Plaintiffs failed to show there were genuine issues of material fact and failed to make an actionable claim of misrepresentation. In the alternative, Maryl argues the circuit court should have granted Maryl summary judgment.

### 1. Misrepresentation—Negligent and Intentional (Counts I and III)

In its Motion to Dismiss/Summary Judgment, Maryl argued that Plaintiffs' misrepresentation claims (Counts I and III) should be dismissed because Chang–Stroman admitted in his deposition that the only misrepresentation he was alleging was the CAM fee estimate. Maryl asserted that under Hawai'i law, to be actionable, a misrepresentation must relate to a past or existing material fact and since the CAM fee estimate related to future expenses, there was no actionable claim.

In their Opposition Memorandum, Plaintiffs argued, in relevant part:

[A] prediction or opinion is actionable as fraud in Hawaii if the person making the statement has specialized knowledge upon which another is entitled to rely. (*Lui Ciro, Inc[.] v[.] Ciro, Inc.*, 895 Fed.Supp. 1365 (1995)[)]. (*Bulgo v[.] Munoz*, 853 F.2d 710, (1988)[)]. (*Touche Ross, Ltd. v[.] Filipek*, [7] Haw.App. 473, 778 P[.]2d 721 (1989)[)]. . . . Even Mark Richards, CEO and principal of [Maryl], admits that a real estate developer should be able to accurately predict the CAM charges for a building prior to the commencement of construction, and that, in his own words, "Clearly going forward this assumption was grossly underpriced". (Letter dated March 12, 1999 from Mark Richards to Dr.

Stroman, attached as Exhibit "D" to the Declaration of Loi Chang–Stroman, M.D.).

In *Bulgo v. Munoz*, 853 F.2d 710 (9th Cir.1988), the Ninth Circuit Court of Appeals stated that "an actionable misrepresentation must relate to fact and *cannot be based on an expression of opinion or a prediction.*" *Id.* at 716 (emphasis added). Nowhere did Plaintiffs demonstrate in their Opposition Memorandum that the alleged misrepresentation related to a fact as· opposed to an expression of opinion or a prediction. The CAM fee estimate, just like any other estimate, could only be characterized as a prediction of future costs and not a factual statement as to actual future costs.

The United States District Court for the District of Hawai'i in *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F.Supp. 1365 (1995), stated that "[g]enerally, a prediction or opinion is not actionable as fraud unless the person making the statement has specialized knowledge upon which another party is entitled to rely." *Id.* at 1376. However, the court also stated that "[g]enerally, unfulfilled promises cannot form the basis for fraud unless it can be proved that *the promisor had no intention of fulfilling the promise,* rendering it misleading when made." *Id.* (emphasis added). Furthermore, the court pointed out that in *In re GlenFed, Inc. Securities Litigation,* 42 F.3d 1541, 1548 (9th Cir.1994), the Ninth Circuit Court of Appeals

fleshed out the requirement of an explanation of falsity, comparing an obviously false representation that a house built on a landfill was in perfect shape, with *"fraud by hindsight," where a plaintiff argues that the difference between a company's earlier statements of good health and later statements of failing health "must be" attributable to fraud.* In the case of the house, the statement was always false because the house was always defective. *However, in the latter case, the problem with the representation could be ascribed to an error in judgment.* Plaintiff must set forth facts *explaining why the difference between the earlier and the later statements or conditions is not merely the difference between two permissible judgments, but rather the result of a falsehood.*

*Lui Ciro, Inc.*, 895 F.Supp. at 1375 (internal quotation marks, citations, and brackets omitted; emphasis added).

Mark Richards, Maryl's Chief Executive Officer, stated in his affidavit attached to the Motion to Dismiss/Summary Judgment that he was responsible for calculating the estimated CAM expenses; the term "estimated" was specifically utilized because the building had not yet been constructed and CAM expenses had not yet been incurred; the actual real property taxes and insurance costs were higher than anticipated; in a show of good-faith, Maryl credited Plaintiffs the difference between the CAM fee billed in January 1998 and the CAM fee estimated in the lease; and he did not intentionally underestimate the CAM expense for the space leased to McElroy Inc.

In their Opposition Memorandum, Plaintiffs stated that they were "prepared to present evidence from which a jury can find that the CAM fee estimates were so significantly low that [Maryl] either did not believe them at the time they were presented to Plaintiffs (particularly in light of the far higher figures given to Jason Lau[4] and the concealment from Plaintiffs), or that [Maryl] had no reasonable basis for believing the estimates at the times they were presented." (Footnote added.) However, Plaintiffs failed to present this evidence in or with their Opposition Memorandum. In his deposition, Jason Lau stated that he had been given the CAM figures sometime in September 1997 (when the building was occupied by tenants). Chang–Stroman's and McElroy's answers to interrogatories showed that the alleged CAM fee misrepresentations were made in early 1996 (before the building was complete or occupied). Plaintiffs failed to set forth facts explaining why the difference between the earlier CAM fee estimates and the later actual CAM costs were not merely the difference between two permissible judgments, but rather the result of a falsehood. *Lui Ciro, Inc.*, 895 F.Supp. at 1375.

4. Jason Lau was the general partner and managing partner of Lau Enterprises, the purchaser of

The Hawai'i Supreme Court in *TSA International Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 990 P.2d 713 (1999), stated:

To be actionable, the alleged false representation must relate to a past or existing *material* fact and not the occurrence of a future event. As this court has previously observed:

Fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and *an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise.*

Indeed, as this court has long stated:

Fraud is never presumed. Where relief is sought on account of fraudulent representations, the facts sustaining the charge should be clearly and satisfactorily established. Where misrepresentations are made to form the basis of relief, they must be shown to have been made with respect to a material fact *which was actually false.*

*Id.* at 255–56, 990 P.2d at 725–26 (internal quotation marks, citations, brackets, and elipsis omitted; emphasis in original and added; block quote format changed) (quoting *Stahl v. Balsara*, 60 Haw. 144, 148 & 149, 587 P.2d 1210, 1213 & 1214 (1978)). This court in *Honolulu Federal Savings & Loan Ass'n v. Murphy*, 7 Haw.App. 196, 753 P.2d 807 (1988), stated:

A *promise relating to future action or conduct* will be actionable, however, if the promise was made without the present intent to fulfill the promise. Moreover, the standard of proving fraud with respect to written contracts is extremely high, and a written contract will be cancelled only in a clear case of fraud supported by clear and convincing evidence.

*Id.* at 201–02, 753 P.2d at 812 (internal quotation marks, citations, and brackets omitted; emphasis added).

the Crossroads Center from Maryl.

Chang–Stroman clearly indicated in his deposition that the only misrepresentation he was alleging related to the *estimated* CAM fee. Plaintiffs did not allege or present evidence that Maryl made a promise relating to future action or conduct; rather, the evidence showed that the estimated CAM fee was subject to change. Specifically, paragraph D.2. of the Lease provided:

> 2. *Tenant's Percentage of Property Expenses and Utility Charges:* 51.2%. During the entire term of this Lease, including the Escalation Period, if any, Tenant shall pay monthly, as additional rent, its percentage of the "Property maintenance and operating expenses" and utility charges not separately metered *presently estimated* at twenty-five cents ($.25) per square foot per month, as provided in Paragraphs 5 and 16 of the Standard Terms and Provisions, *subject to adjustment,* however, as provided in Paragraphs 5 and 16.

(Emphasis added.) Paragraph 5.b. of the Standard Terms and Provisions portion of the Lease provided in relevant part:

> b. *Computation of Additional Rent.* ... The maintenance and operating expenses for the Property shall be computed on an annual basis, at the beginning of each calendar year, and, *to the extent such expenses are not fixed or known in advance, shall be estimated by the Landlord for the ensuing year.* ... Landlord shall have the right, in the event of unusual or extraordinary maintenance and operating expenses, to assess and collect, as additional rent, either as a one time or continuing charge, additional sums under this Paragraph 5. to pay such expenses without affecting the Tenant's liability for the monthly sums hereinabove described.

(Emphasis added.)

Moreover, Chang–Stroman agreed in his deposition that he knew the estimated CAM fee was subject to adjustment, in his mind there was a difference between an estimate and a fixed amount, and it was never represented to him at any time during the negotiations, either of the Proposal or the subsequent Lease, that the CAM fee for the commercial space was fixed. Plaintiffs failed to present evidence showing that the CAM fee estimate representations were not "mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events." *TSA Int'l Ltd.,* 92 Hawai'i at 255, 990 P.2d at 725.

Viewing all of the evidence and inferences drawn therefrom in the light most favorable to Plaintiffs, it is evident that there were no genuine issues as to any material fact on Plaintiffs' misrepresentation claims. *Querubin,* 107 Hawai'i at 56, 109 P.3d at 697. We hold that the circuit court erred by denying Maryl's Motion to Dismiss/Summary Judgment with respect to Plaintiffs' misrepresentation claims (Counts I and III).

### 2. Chapter 480 Unfair and/or Deceptive Trade Practices (Count VIII)

Count VIII of Plaintiffs' Complaint alleged in relevant part:

> (40) Individual Plaintiffs [McElroy and Chang–Stroman] reasonably relied upon the representations of Maryl, aforedescribed [sic], prior to and concurrent with the execution of the July 5th, 1996 lease agreement as *personal guarantors.*

> (41) In further reasonable reliance, Individual Plaintiffs invested personal funds for the construction of improvements to the leased premises as a personal investment.

> (42) As aforedescribed [sic], the representations by Maryl, including Maryl Realty and its authorized agents, were false, *thereby constituting an unfair/deceptive trade practice* prohibited by H.R.S. Chapter 480.

> (43) As a direct and proximate result of the *unfair and deceptive trade practice* perpetrated upon Individual Plaintiffs, *Individual Plaintiffs have been damaged* and continue to so be damaged in an amount to be proven at trial.

> (44) Individual Plaintiffs are also entitled to an award of treble damages, together with reasonable attorney's fees and costs of action pursuant to H.R.S. Chapter 480.

(Emphasis added.)

In its Motion to Dismiss/Summary Judgment, Maryl argued that Plaintiffs did

not have standing to sue under HRS Chapter 480 for unfair and deceptive trade practices because Plaintiffs, individually and/or collectively, were not "consumers" under HRS § 480–1 and because real estate does not constitute "goods" under HRS § 480–1. Maryl asserted that since Plaintiffs did not have standing to bring a claim under Chapter 480, Plaintiffs' unfair and deceptive trade practices claim should be dismissed.

In Plaintiffs' Opposition Memorandum, Plaintiffs admitted that "[r]ecovery for deceptive trade practices is restricted to a consumer, the attorney general or the director of the office of consumer protection." Plaintiffs asserted that the limitation did not apply to those injured by unfair *methods of competition* and argued the alleged intentional misrepresentations could be held to be unfair competition claims. However, as seen above, Plaintiffs alleged only unfair and deceptive trade practices in their Complaint and made no mention of unfair methods of competition. Therefore, we only consider whether Plaintiffs had standing under Chapter 480 to bring suit on the basis of unfair or deceptive trade practices.

Hawaii Revised Statutes § 480–2 (1993) states in relevant part that "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." Section 480–1 (1993) defines a "consumer" as "a *natural person* who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." (Emphasis added.)

At the outset, it is evident that McElroy Inc. does not have standing to bring suit under this chapter because a corporation is not a natural person. It also is apparent from the Complaint that McElroy and Chang–Stroman were not alleging that they purchased, attempted to purchase, or were solicited to purchase goods or services. Consequently, we look to whether the contribution of personal funds for improvements on leased commercial property can be considered a personal investment.

The Hawai'i Supreme Court in *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 905 P.2d 29 (1995), examined Chapter 480 with respect to the scope of the term "investment." The court first provided the dictionary definition of "invest" as "to put (money) to use, by purchase or expenditure, in something offering profitable returns, esp. interest or income." *Cieri*, 80 Hawai'i at 67, 905 P.2d at 42 (quoting *The Random House College Dictionary* 702 (rev. ed.1979)). The court went on to discuss the legislative history, noting a standing committee report that stated:

> The purpose of this bill is to amend Section 480–1, Hawaii Revised Statutes, by changing the definition of "consumer."
>
> . . . .
>
> The DCCA [Department of Commerce and Consumer Affairs] testified that the definition of "consumer" in Chapter 480 *was a distinct approach to consumer protection,* and that the word "investment" was not restricted to securities, but includes other types of ventures.
>
> . . . .
>
> Background information was given for the definition [of "consumer"] by an attorney who stated that when the definition of "consumer" was formulated, the Office of Consumer Protection (Division of DCCA) wanted to insure that people *who had invested in bogus financial schemes* would be covered by Section 480–2.
>
> Your Committee believes that one of the purposes for the definition of "consumer", as formulated in Section 480–2, was to address the consumer investment fraud situation. . . . However, the language of the definition may be overbroad and not limited to situations of investment fraud schemes to consumers. *Therefore, your Committee has amended the bill by inserting the word "personal" before the word "investment" to clarify that the provision is to protect individual consumers, rather than businesses.*

*Id.* at 68, 905 P.2d at 43 (emphasis in original omitted; above emphasis added; footnote

omitted) (quoting Hse. Stand. Comm. Rep. No. 716–90, in 1990 House Journal, at 1113).

There was nothing in Plaintiffs' Opposition Memorandum to support Plaintiffs' contention that the investment of personal funds for the construction of improvements on the leased commercial space was a personal investment within the ambit of Chapter 480. The dictionary definition in *Cieri* clearly demonstrated that the concept of "investment" includes an expectation of "profitable returns." Furthermore, the standing committee report clearly evinced the legislature's intent that the provision be used to protect individual consumers rather than businesses. It is unclear how improvements to the *leased commercial* space could be considered an investment, much less a *personal* investment, where the named lessee was McElroy Inc. and McElroy and Chang–Stroman were only guarantors on the Lease and officers of the corporation. Accordingly, we hold that Plaintiffs were not "consumers" as defined in HRS § 480–1.

Plaintiffs, individually and collectively, did not have standing to bring suit under HRS Chapter 480 for alleged unfair/deceptive trade practices. We conclude the circuit court erred in denying Maryl's Motion to Dismiss/Summary Judgment and should have dismissed the unfair/deceptive trade practices claim in Count VIII as a matter of law.

### 3. Bad Faith—Tortious and Contractual (Counts II and VI)

In its Motion to Dismiss/Summary Judgment, Maryl argued that Plaintiffs' bad faith claims (Counts II and VI) should be dismissed for failure to state a claim upon which relief could be granted. We discuss each bad faith claim separately as each claim arises from different areas of law.

#### a. Breach of Contract—Good Faith and Fair Dealing (Count VI); Rescission (Count IV)

Maryl acknowledged, in its Motion to Dismiss/Summary Judgment, the duty of good faith and fair dealing in the performance and enforcement of a contract. Maryl argued that the contractual bad faith claim should be dismissed because Plaintiffs did not allege that Maryl breached any contractual obligation under the Lease.

In Plaintiffs' Opposition Memorandum, Plaintiffs argued that a jury could find that Maryl breached its contractual duty to act in good faith by making "wilfully false or negligent" misrepresentations with respect to the erroneous CAM fee estimate and/or by failing to promptly inform Plaintiffs of its error upon discovering the error.

The Hawai'i Supreme Court in *Best Place, Inc. v. Penn America Insurance Co.*, 82 Hawai'i 120, 920 P.2d 334 (1996), stated:

> The obligation to deal in good faith is now a well-established principle of contract law. Restatement (Second) Contracts § 205 (1979) provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." In *Hawaii Leasing v. Klein*, 5 Haw.App. 450, 456, 698 P.2d 309, 313 (1985), the Intermediate Court of Appeals (ICA) explicitly recognized that parties to a contract have a duty of good faith and fair dealing in performing contractual obligations.

*Id.* at 124, 920 P.2d at 338. In *Hawaii Leasing v. Klein*, 5 Haw.App. 450, 698 P.2d 309 (1985), this court explained that "[g]ood faith performance emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* at 456, 698 P.2d at 313 (internal quotation marks and citation omitted).

In support of Plaintiffs' claim that a jury could find the duty of good faith and fair dealing was breached because Maryl failed to promptly inform Plaintiffs that the CAM fee estimate was erroneous, Plaintiffs attached to their Opposition Memorandum Chang–Stroman's declaration, which stated in part:

> (11) During September, October, November and December, 1997 Plaintiffs were billed and paid .25¢ [sic] per square foot for monthly CAM charges.

> (12) In or about January, 1998, Plaintiffs were presented with a document entitled "1998 CAM budget".... At that time Plaintiffs were informed by representatives of Defendant, including Mark Richards, that the monthly CAM charge had

more than doubled, to .55¢ [sic] per square foot.

Plaintiffs also attached the Declaration of James E. Fleming (Fleming), a licensed real estate broker. In relevant part, Fleming stated:

> (10) Inasmuch as real estate developers are aware prospective tenants are dependent on estimated costs, developers are usually motivated to create a reasonably reliable initial CAM budget *responding to their duty to these tenants to:* (1) create as accurate an estimated budget as possible and, (2) *disclose that estimated budget including any errors or adjustments thereto, to prospective and later actual tenants at the earliest opportunity.*
>
> . . . .
>
> (14) ... Maryl Development *operated contrary to standard industry practices in Hawaii in failing to inform [McElroy Inc.] in a timely manner of revised and adjusted estimates of CAM charges* it knew [McElroy Inc.] would incur as a tenant at Crossroads Center. *These failures continued even after [McElroy Inc.] took possession of the leased space at Crossroads Center.*
>
> (15) It is my opinion, these errors were compounded when the actual first year's CAM charge proved to be 300% greater ($.20 v. $.60/sf/mo) than the initial estimate represented to [McElroy Inc.] during the marketing period prior to the lease signing. *It is my opinion this is further exacerbated by the apparent failure of Maryl Development to advise [McElroy Inc.] until January 15, 1998 of the revised and substantially increased estimated CAM charge about which Maryl Development had been aware, long after [McElroy Inc.] moved into the leased space and commenced business therefrom.*

(Emphasis added.) Finally, Plaintiffs attached a March 12, 1999 letter from Mark Richards to Chang–Stroman, in which Mark Richards stated:

Maryl Group is willing to credit the difference between the amount billed of $.51 per square foot and the $.25 per square foot for January 1998 CAM in the outstanding amount of $1,721.97.

*The basis for this credit resulting from the review is our assertion that the first year CAM would be approximately $.25 per square foot. Clearly going forward this assumption was grossly under priced.*

(Emphasis added.)

Maryl, in a footnote in its Reply Memorandum, countered Plaintiffs' argument by stating: "Of course, Plaintiffs' argument that they were not informed of an increase in CAM expenses until January 1, 1998, only means that Maryl complied with the terms of the Lease which requires that '[a] breakdown of actual maintenance and operating expenses be provided to the Tenant within one hundred (120)[sic] days of each calendar year end.' "

Viewing the evidence in a light most favorable to Plaintiffs, there were genuine issues as to whether Maryl was faithful to an agreed common purpose and acted consistently with the justified expectations of Plaintiffs by failing to disclose at an earlier date that the CAM fee was significantly higher than the CAM fee estimate. *Hawai'i Leasing,* 5 Haw.App. at 456, 698 P.2d at 313. The circuit court did not err by denying Maryl's Motion to Dismiss/Summary Judgment with respect to the breach of contract claim alleging bad faith (Count VI).[5] Furthermore, since rescission is a contractual remedy, the circuit court did not err by denying Maryl's Motion to Dismiss/Summary Judgment with respect to the claim for rescission (Count IV).[6]

#### b. Breach of Duty–Tort (Count II)

With respect to Plaintiffs' "breach of duty" claim, Maryl argued in its Motion to Dismiss/Summary Judgment:

> Because the Hawai'i Supreme Court has recently repudiated the cause of action for tortious breach of contract in *Francis v.*

---

5. This count was subsequently dismissed with prejudice by stipulation of the parties.

6. This count was subsequently dismissed with prejudice pursuant to the exclusive election of remedies by McElroy Inc. and Chang–Stroman.

*Lee Enters.*, 89 Haw. 234, 971 P.2d 707 (1999), *See Hokama v. University of Hawai'i*, 92 Haw. 268, 990 P.2d 1150 (1999), Plaintiffs' Count[ ] II ... must necessarily be asserting tortious bad faith.... In *Hokama*, however, the Supreme Court expressly stated that it was unaware of any authority recognizing a "tortious bad faith" cause of action beyond the insurance context. *Hokama*, 92 Haw. at 273. This case did not arise in the insurance context. Neither is there any basis to suggest an "atypical" relationship between Plaintiffs and Maryl. *See Francis*, 89 Haw. at 238 (citing *Best Place[, Inc. v. Penn America Insurance Co.*], 82 Haw. [120,] 132, 920 P.2d [334,] 346 [1996] ). The Lease was negotiated and executed by experienced business men, with equal bargaining power, and experienced legal counsel.

. . . .

... The tort of bad faith, however, "is not a tortious breach of contract, but rather a separate and distinct wrong which results from the breach of a duty imposed as a consequence of the relationship established by contract." *Best Place, Inc. v. Penn America Insurance Co.*, 82 Hawai'i 120, 131, 920 P.2d 334, 345 (1996). Plaintiffs have not and cannot allege a legally cognizable breach of contractual duty.

■ Plaintiffs failed to address this argument in their Opposition Memorandum. It also appears this argument was not addressed at the hearing on the Motion to Dismiss/Summary Judgment.

Under HRCP Rule 56(e), Plaintiffs could not rest upon the mere allegations or denials of their pleading, but their response must have "set forth specific facts showing that there [was] a genuine issue for trial." Since Plaintiffs failed to respond accordingly, Maryl should have been granted summary judgment. We hold the circuit court erred by denying Maryl's Motion to Dismiss/Summary Judgment with respect to Plaintiffs' tortious bad faith claim (Count II).[7]

7. This count was subsequently dismissed with

### 4. Punitive Damages (Count V)

The Hawai'i Supreme Court made clear in *Francis v. Lee Enterprises, Inc.*, 89 Hawai'i 234, 971 P.2d 707 (1999), that "Hawai'i law will *not* allow a recovery in tort, *including a recovery of punitive damages*, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." *Id.* at 244, 971 P.2d at 717 (emphasis in original and added). Since we hold the circuit court erred by not granting Maryl summary judgment on all of Plaintiffs' tort claims, we also hold the circuit court erred by not granting Maryl summary judgment on Plaintiffs' claim for punitive damages (Count V).

### 5. Second Breach of Contract Claim— Breach of Promise (Count VII)

With respect to the second breach of contract claim (Count VII), Plaintiffs alleged in pertinent part:

(36) Maryl charged CAM to Plaintiff at a rate greater than the twenty-five cents ($0.25) per square foot it promised not to exceed.

(37) As a result of the excessive CAM charged to Plaintiff, and required by Maryl to be paid, Maryl has breached its agreement with Plaintiff.

(38) As a result of the breach of agreement by Maryl, Plaintiff has been damaged and is entitled to an award of damages equal to the damages suffered as a result of Maryl's breach, together with an award of attorneys fees and costs of action.

■ Maryl argued in its Motion to Dismiss/Summary Judgment that this claim violated HRCP Rule 11 for not being well-grounded in either the facts or the law and that the claim should be dismissed. Plaintiffs did not address Maryl's contention in their Opposition Memorandum. There was no evidence in the declarations or exhibits attached to Plaintiffs' Opposition Memorandum that supported Plaintiffs' allegation that Maryl had promised the CAM fee would not exceed a rate of $.25. Moreover, questioning during Chang–Stroman's deposition indicated

prejudice by stipulation of the parties.

the allegations were based on hearsay and conjecture:

Q [Maryl's Counsel] Sir, in paragraph 36 of your complaint, this is your second breach of contract claim, the allegation is that Maryl promised not to exceed and then it's 25 cents per square foot common area maintenance fees. Where did they promise not to exceed 25 cents?

A [Chang–Stroman] As I mentioned earlier when I asked right about the time of signing the lease about the amounts, *[Chang–Stroman's Counsel] had a chance to speak with representatives of Maryl and that was the response.*

Q Their response from Maryl was that they promised not to exceed 25 cents per square foot common area maintenance fees on your space?

A *That's what I believe was interpreted to me.*

Q And that was interpreted how?

A I asked my attorney to discuss this with Maryl.

Q Anywhere else, anywhere else that supports your allegation that Maryl promised that your common area maintenance fees would not exceed 25 cents per square foot?

A *Not that I can recall.*

(Emphasis added.)

As stated in HRCP Rule 56(e), adverse parties may not rest upon mere allegations and in their response must set forth *specific facts* showing a *genuine* issue of fact. Since Plaintiffs failed to respond in the appropriate manner, Maryl was entitled to summary judgment as a matter of law under HRCP 56(e). We hold that the circuit court erred by not granting Maryl summary judgment with respect to the second breach of contract claim (Count VII).[8]

## IV.

Therefore, the Judgment filed on January 5, 2001 in the Circuit Court of the Third Circuit is vacated, and this case is remanded with instructions to the circuit court to enter summary judgment in favor of Maryl on all claims except the claims in Counts II, IV, VI, and VII, which were dismissed with prejudice by the parties, and for further proceedings consistent with this opinion. Consequently, we decline to address the remainder of Maryl's contentions.

8. This count was subsequently dismissed with prejudice by stipulation of the parties.